ROBERT M. SHOUSE, IN HIS OWN RIGHT, AND AS ADMINISTRATOR OF THE ESTATE OF MARIE E. SHOUSE, DECEASED, APPELLANT, VS. DANIEL DOANE, APPELLEE.

1. When the terms of a written contract are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter, or in a given emergency, and the parties to it have by their conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract.

2. Although time be made of the essence of a contract, yet if the party to whose benefit such provision inures, subsequent to the time when a forfeiture would occur under such provision, by deliberate acts recognizes the contract as still subsisting, such conduct will amount to a waiver of such forfeiture, on his part.

3. Where time is made material by express stipulation in a contract, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to specific performance if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it inequitable or unjust to give such relief, for the discretion with a court of equity has to grant or refuse specific performance may, and of necessity must, often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions.

4. Where the payment of the last installment of purchase money by the vendee and the conveyance of the title by the vendor are concurrent and dependent acts, the vendee before he can maintain a bill for specific performance against the vendor must pay or tender the purchase money in full. The tender need not, however, be unconditional, for such tender must necessarily, from its nature, be conditional only and depend-

ent on and to be performed only in case of the readiness of the other party to perform his part of the agreement of sale.

5. A contract to convey land by good and sufficient deed does not bind the party merely to execute a deed good in point of form, but it obliges him to make a title to the land, free from reasonable doubt, and to remove any existing incumbrances or protect the vendee against it.

6. A contract to convey land by good and sufficient deed obliges the vendor to execute a deed so drafted and executed as to leave no reasonable doubt of its legal sufficiency to convey the land, and free from all such interlineations and erasures as are reasonably calculated to throw suspicion or cast doubt. upon the paper as a valid, *bcna fide* conveyance.

Appeal from the Circuit Court for Clay county.

STATEMENT.

This was a bill for specific performance originally filed April 4, 1889, by appellant and his wife Marie E. Shouse, against the appellee in the Circuit Court of Clay county, and subsequently, after the death of the said Marie E., revived in the name of the present appellant, in his own right, and as administrator of her estate. The contract sought to be specifically enforced was in the following language: This agreement made in duplicate this the twenty-seventh day of Nov., A. D. 1884, by and between Daniel Doane, of Brooklyn, in the county of Suffolk, State of Mass., and Marie E. Shouse of Orange Park, in the county of Clay, State of Florida. Daniel Doane of Brooklyn, county of Suffolk, State of Mass., of the first part, Marie E. Shouse of Orange Park, in the county of Clay, State of Florida, party of the second part. Witnesseth: That whereas the said party of the second part has agreed to purchase of the said party of the first part a certain parcel of land situated

in the town of Orange Park, county of Clay, and State of Florida, and described as follows, to-wit: Lot numbered 8, block 11, sec. 1, as shown on plan of lands entitled: Map of Florida Winter Home and Improvement Company's Lands, and recorded in the county clerk's office, Clay county, State of Florida, in book K, page 59, of public records in said Clay county, containing one-half acre, more or less, for the sum of four hundred and seventy-five dollars ($475), with interest from the date of this instrument at seven per cent. interest per annum, payable at the office of W. H. Crocker at Orange Park, county of Clay, State of Florida, as follows: One-quarter of the purchase money, $118.75, on the delivery of this instrument, and the balance in three equal payments of $118.75, each, with accrued interest. The party of the second part has given three promissory notes of even date herewith, which said notes form a part of this agreement, and has agreed to pay all taxes and assessments upon said land before the same becomes delinquent, and that time is of the essence of this agreement; and if any of the said stipulations are not duly complied with, all right to the said land and improvements thereon and all moneys paid therefor shall be forfeited to the said party of the first part, and the said party of the second part shall thereafter hold the said land only as a tenant at sufferance to the said party of the first part, and that no right under this agreement shall be assignable without the written consent of the said parties of the first part. Now, therefore, in consideration of the above, the said party of the first part for their heirs and assigns agree to give the said party of the second part possession of the said land so long as

the agreement above set forth is complied with; and, upon the payment of said promissory notes and other stipulations above set forth being complied with to convey the said land by good and sufficient deed to the said party of the second part. In witness whereof the said parties of the first and second part hereunto set our hands and seals in duplicate.

Witness:

| | | |
|---|---|---|
| H. A. FERNALD, | DANIEL DOANE, | (Seal). |
| W. H. CROCKER, | MARIE E. SHOUSE, | (Seal). |
| W. H. CROCKER, | R. M. SHOUSE, | (Seal). |

After the cause was revived on June 20, 1890, the appellant filed his "amended and supplemental bill" as he terms it, by which was alleged the making of the agreement sought to be enforced, the ownership by defendant at that time of the premises therein described, the payment of the $118.75 in cash mentioned in the agreement; the giving of notes for the deferred payments; the payment of the two notes first falling due, the payment of all taxes on the land, the readiness and willingness of said Marie E. at all times during her lifetime, and of appellant, both before and since her death, to perform all the stipulations of the contract; that they did perform them; that the deceased upon the making of the contract took possession of the premises, and remained in possession until she died; that complainant was, at the time of filing the supplemental and amended bill, in possession thereof; that on November 27, 1889, said Marie E. applied to defendant and offered to pay him the last promissory note and interest, and then and there tendered him the money, principal and interest then due, and requested a good and sufficient deed, which defendant refused to execute, and continued to refuse until the date of fil-

ing the bill; that complainant was still willing to pay said money and otherwise to perform fully the terms of the agreement whenever the defendant should make and deliver a good and sufficient deed for the property, and praying that defendant be decreed to specifically perform said agreement and execute a deed for said land; the complainant being willing and thereby offering to specifically perform said agreement and to pay defendant whatever might be due him.

The defendant filed his answer June 23, 1890, admitting the execution of the agreement, denying that by its terms he was to execute a warranty deed, or a deed in fee simple, but only a "good and sufficient deed," upon payment of the promissory notes referred to in the agreement and the performance of the other stipulations therein, denying that the first two notes were paid promptly and alleging that he collected them with great difficulty and trouble, being compelled to accept small fractional amounts at irregular times as he could get them, alleging that the notes were not fully paid until long after maturity, although defendant was constantly demanding and pressing payment; that he even had to take about $15 worth of paint out of a stock of goods, of which R. M. Shouse was assignee, to complete the payment of the second note; that a number of the payments applied to the notes were collected by him for rent from the tenant on said land and applied as credits on the notes, whereas the stipulations of said agreement having been broken by said Marie E. and her husband, the possession of the land had reverted to defendant, and such rent was really due to him, and not to said Marie E. and husband; that in relation to the third note, referred to in the bill, no legal tender was ever made to

defendant of the amount thereof; that said Marie E. made no offer to pay same, but that R. M. Shouse, her husband, said something to defendant's agent sometime in the summer of 1888 to the effect that he had money ready to pay same whenever defendant would execute a regular warranty deed to the land, but that defendant was informed and believed that said R. M. Shouse never exhibited or offered any money. Defendant further alleged that he executed a deed of bargain and sale to the land in favor of Marie E., and by his agent tendered same to Marie E. and her husband on their payment of the amount due on the third note and certain taxes due and unpaid for two years which defendant had paid to prevent a sale of same for taxes; but the said R. M. Shouse declined said deed and did not pay the note and taxes, but insisted that he required a warranty deed from the defendant before he would make further payment, whereupon the defendant inserted a general warranty clause in the deed and returned it to his agent to again tender to said Marie E. and demand payment of the note and taxes; but that said Marie E. and her husband still refused to accept the deed or pay the money, wherefore the defendant, having exercised great patience and forbearance in the premises, and having overlooked and failed to take advantage of the numerous failures on the part of Mrs. Shouse to comply with the contract, was at last compelled to assert his rights in the premises and to declare the rights of said Marie E. to the said land under said contract "to be lost," and all moneys paid thereon forfeited; and defendant was also compelled to *virtually* resume possession of the land and to assume the ownership of same. The deed mentioned in the answer was attached thereto as an

exhibit. A general replication was filed to this answer; testimony was taken, and on May 6, 1891, a final decree dismissing the bill was rendered, from which this appeal was taken. Such portions of the testimony as may be deemed material will be stated in the opinion.

The other facts in the case are stated in the opinion of the court.

*R. W. & W. M. Davis*, for Appellant.

*Cooper & Cooper*, for Appellee.

CARTER, J.:

On the pleadings and testimony we think the court below should have granted the prayer for specific performance. It is contended on behalf of appellee, first, that the payment of the last note and taxes was a condition precedent which had to be performed by complainant before he was in a condition to demand a deed to the premises; second, that time was of the essence of the contract, and therefore a failure to perform any stipulation promptly, on the day same was required by the agreement to be performed, forfeited all claims to a conveyance under the contract; third, that no legal tender of the amount due upon the last note and taxes, was ever made, in that the offer to pay was coupled with a demand for a deed, and no money was actually exhibited; fourth, that the defendant was not bound by the contract to execute a warranty deed to the lands, but simply such a conveyance as would pass whatever interest the defendant owned in the lands; fifth, that it was not the duty of the defendant to prepare the deed to be executed under the

contract, but such duty devolved upon the complain-ant.

Upon the first, fourth and fifth contentions of ap-pellee, the evidence was substantially to this effect: The cash payment mentioned in the contract of sale was made when the contract was signed and three promissory notes were given for the three deferred payments. The two notes first due were paid before the maturity of the last one. Two years' taxes on the lands had been paid by appellee. These taxes were paid before they became delinquent, but prior to the expiration of the time allowed by law within which to pay them, the agent of complainant applied to the collector to pay them, but he refused to accept the taxes because they had already been paid by appellee. The last note matured November 27th, 1887. On No-vember 18th, 1887, nearly ten days prior to the ma-turity of the last note, the defendant prepared or had prepared and executed a deed without covenants of warranty, purporting to convey the lands mentioned in the agreement to Marie E. Shouse in fee simple, in consideration of $475, and forwarded same to his agent to be delivered upon payment of the taxes and note due November 27th, 1887. On maturity of this note the agent presented it for payment, and the deed for delivery; but compainant declined to receive the deed because it contained no covenants of warranty; and informed the agent that he then had the money to pay the note and taxes, and would pay same upon delivery of a proper deed. The agent handed the deed to complainant, who returned it saying he was entitled to a warranty deed. The agent then for-warded the deed to defendant, stating the complain-ant's objections. Defendant thereupon interlined in

the deed a covenant of warranty and returned it to his agent who again offered it to complainant. Complainant again declined it as insufficient, and the agent returned it to defendant. The date of this last tender of the deed is not shown, but was subsequent to November 27, 1887. It further appeared that in December, 1887, the agent exhibited this deed to an attorney, stating to him that the deed originally had a clause of warranty in it which had been erased prior to its execution by the defendant, that without a warranty it was not acceptable to complainant, that it had been returned to defendant, •who had inserted or interlined a clause of warranty, and requested the opinion of the attorney upon the question of its sufficiency, who informed him that the deed was not a good one because it was mutilated, and did not appear to have been re-acknowledged after the interlineations. The agent requested him to write to the defendant stating that it was not such a deed as complainant was entitled to, which he did, and defendant replied that "he thought his lawyer knew as much about what was a good deed" as certain other people named by him. Defendant never questioned the right of complainant to a warranty deed when told that complainant insisted upon it, but proceeded to make the deed a warranty.

From this statement of the evidence it is apparent that the construction placed upon the written agreement by the parties themselves entitled the complainant to a deed with covenants of warranty, conveying the land in fee simple, that this deed was to be *prepared* by the defendant, and was to be delivered simultaneously with the payment of the last note and taxes; and we think this practical construction so put

upon the agreement by the parties themselves must prevail. It will be observed that there is no provision in the contract declaring who shall prepare the deed, or the covenants to be contained therein, and it is at least doubtful, from the language used, whether the payment of the money due upon the last note and taxes, and the delivery of the conveyance, were not to be concurrent and simultaneous acts. Where the terms of a written agreement are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter, or in a given emergency, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the court, upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract. 1 Beach Modern Law of Contracts, secs. 721, 722; 1 Warvelle on Vendors, p. 121, sec. 5.

As to the second contention, that time was of the essence of the contract, it is true the contract contained a stipulation to the effect that time was of the essence of the agreement, and if any of its stipulations were not duly complied with, all right to the land and improvements thereon, and all moneys paid therefor, should be forfeited to the defendant, and thereafter the complainant and wife should hold the land only as tenants at sufferance. In Woods vs. Bailey, Admr., 3 Fla. 41, text 68, it is said: "No damage is stated in the bill, but only it is urged that time was of the essence of the contract. In Story Eq. Jur., sec. 776, it is laid down as true that courts of

equity have regard to time so far as it respects the
good faith and diligence of the parties. But if cir-
cumstances of a reasonable nature have disabled the
party from a strict compliance, or he comes *recenti
facto*, to ask for a specific performance, the suit is
treated with indulgence, and generally with favor by
the court." The provision in the contract referred to
was one for the benefit of the defendant, which he
could enforce or not at his election (Dana vs. St. Paul
Investment Co., 42 Minn. 194, 44 N. W. Rep. 55), and
if, subsequent to the time when a forfeiture would
occur under the terms of the contract, the defendant
by deliberate acts recognized the contract as still sub-
sisting, such conduct would amount to a waiver on his
part of the forfeiture. In the case of Paulman vs.
Cheney, 18 Neb. 392, 25 N. W. Rep. 495, it is said:
"In conclusion, * * * a court of equity will not
declare a forfeiture unless compelled to do so. It vio-
lates every principle of justice to take the property of
one man and give it to another without compensation
upon a simple failure to pay at the day, where there
has not been gross laches. While in particular cases
such forfeitures will be sustained, yet they will be de-
nied in all cases where the vendor has directly or in-
directly waived the condition on which they depend;"
and it was held that although time was made the es-
sence of the contract and a forfeiture declared for de-
fault, yet the acceptance of part payment on the con-
tract waived the condition as to all defaults then
existing. See also Ballard vs. Cheney, 19 Neb. 58,
26 N. W. Rep. 587. And in Cheney vs. Libby, 134
U. S. 68, 10 Sup. Ct. Rep. 498. Mr. Justice Harlan
says: "Even where time is made material by express
stipulation the failure of one of the parties to perform

a condition within the particular time limited, will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable delay and no circumstances have intervened that would render it inequitable or unjust to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it, may and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions.'' It was admitted by defendant that the two first notes were not paid promptly; that he collected them with great difficulty and trouble, in fractional amounts at irregular times, as he could get them; that the notes were not fully paid until long after maturity, although he was constantly demanding and pressing payment; that a number of the payments were rents due from tenants on the land which he applied as credits on the purchase money, although by the terms of the contract, the rights of complainant and his wife in the land had been forfeited. Never by word or act did defendant indicate that he would take advantage of any forfeiture until in January, 1888, when formal tender of currency for the amount due him was made by complainant's agent. He expressly recognized the contract as binding when he tendered the deed of bargain and sale on maturity of the notes, and again when he tendered the warranty deed which occurred after its maturity. He made no demand for possession of the property, did not offer to return the note then unpaid, nor has he ever offered to return it. When complainant's agent made the

tender in January, 1888, he declined it, not upon the ground that the contract was forfeited. but because the tender was not made in currency. and it was only after the currency was produced that he claimed that the contract had been forfeited. He is not shown to have been injured or inconvenienced in the slightest by the failure to pay on the day named; nor was it shown that the property had increased in value except by the improvements made thereon by complainant, which he testifies cost $1,750. We think by his conduct the defendant waived that provision of the contract making time the essence of the contract, and that the offer on the part of complainants to pay the note made on or before its maturity, though unaccompanied by an actual tender of the money, followed as it was by an actual tender in January following, entitled complainant to specific performance, notwithstanding the provision in the contract referred to. If it be that complainant was in default in payment of taxes for two years, as contended by defendant, he included these taxes in the amount to be paid by complainant, each time the deed was tendered, which was long after the default in the payment of the taxes. 2 Warvelle on Vendors, p. 826, sec. 11.

As to the third contention, that no legal tender of the money due upon the third promissory note and taxes was ever made, in that no money was actually exhibited, and the offer was accompanied by a demand for a deed, the evidence showed that complainant before the note was due offered to defendant's agent to pay same; that when the deed was first presented complainant replied that the deed was not the kind he wanted; that when he got a deed to suit him he had the money ready; that he had

the money then. After which there was in-serted in the deed a warranty clause and it was again presented, when complainant again stated that the deed was insufficient. It is nowhere denied that an actual legal tender of money for the full amount due de-fendant under the contract, was made by complain-ant's agent to defendant in January, 1888, although this tender was accompanied with a demand for a deed. We have seen that the practical construction placed upon this contract by the parties, made the payment of the last note and taxes, and the convey-ance of title, concurrent and dependant acts. In such cases before the purchaser can maintain a bill for spe-cific performance, he must pay or tender the purchase money in full. Aside from the actual tender made in January, 1888, we think the acts of the complainant when the note matured amounted to such a tender as will entitle him to maintain this bill. The complain-ant was not required to make an unconditional tender. His tender must be, in its nature, conditional only, and dependent on and to be peformed only in case of the readiness of the other party to perform his part of the agreement. The requirement of a "tender of purchase money," used in this connection, does not mean a tender strictly valid at law, but means a present readiness, willingness and ability in good faith, to perform the acts required of one by the agree-ment, provided the other party will concurrently do the things which he is required by the contract to do; and notice by the former to the latter of such readi-ness, willingness and ability. Smith vs. Lewis, 26 Conn. 110; Clark vs. Weis, 87 Ill. 438, S. C. 29 Am. Rep. 60.

It only remains to be seen if the complainant was

justified in declining to accept the deed tendered. It has been held by this court in Frazier vs. Boggs, 37 Fla. 307, 20 South. Rep. 245, that a contract to convey by "good and sufficient deed" does not bind the party merely to execute a deed good in point of form, but that it obliges him to make a good and perfect title to the land and to remove any existing incumbrance, or protect the vendee against it. The title, to be good and perfect, must be free from reasonable doubt (3 Pomeroy's Eq. Jur., sec. 1405), and we think the same rule should apply to the deed tendered, *viz:* that it be so drafted and executed as to leave no reasonable doubt as to its legal sufficiency to convey the land, and free from such interlineations and erasures as are reasonably calculated to throw suspicion or cast doubt upon the paper as a valid, *bona fide* conveyance. A deed is one of the most solemn and important instruments known to the law. It is required to be executed with certain formalities, and it constitutes a link necessary to make out a complete chain of title to real estate. If there are upon its face suspicious alterations, erasures or interlineations, the deed is likely to be questioned and rejected by prospective purchasers of the property it conveys, and this although it may be *legally* sufficient to convey the property. In this case the deed originally contained a clause of warranty. This was stricken out before it was executed by defendant and wife. Subsequently, and after it had been acknowledged, the complainant interlined in the deed the warranty clause without reacknowledging the deed; and it was again tendered in that form. The agent of defendant to whom the deed was submitted, doubted its sufficiency; an attorney whose opinion was asked regarding it, doubted its validity.

It is not shown that the wife consented to the interlineation, or that the interlineation was made in the presence of witnesses.' Were these alterations in the deed sufficient to release the defendant's wife, who was a signer, and whose signature and acknowledgment were essential to convey her dower rights? Would these covenants of warranty estop the wife in case of an after acquired title? If so, and they were inserted without her consent after she had signed the deed, was the deed thereby rendered void as to her? After the alteration of the deed, was the prior acknowledgment sufficient to entitle it to record? These and many other questions of like character arising out of the changes made in the deed after its execution and acknowledgment, are not questions free from any reasonable doubt. We do not think the deed tendered under these circumstances was a "good and sufficient deed," free from any reasonable doubt, and consequently the complainant was justified in refusing to accept it as a performance of defendant's contract.

The decree of the Circuit Court is reversed, with directions to enter a decree authorizing complainant to pay into the registry of the court for the defendant within some reasonable time to be fixed in the decree, the principal of the note due November 27, 1887, and amount of taxes paid by defendant subsequent to the execution of the written agreement, on the lands described therein, with interest upon such amounts at seven per cent. per annum, to February 1, 1888, and upon such payment, requiring defendant to specifically perform said written agreement by the execution and delivery of a good and sufficient warranty deed to the premises, as prayed in the bill of complaint. Tate vs. Pensacola, Gulf. Land and Development Co., 37 Fla. 439, 20 South. Rep. 542.