BARKDULL, Judge.
Pan American Hospital (hereinafter referred to as the hospital) appeals the final order of the Department of Health and Rehabilitative Services (hereinafter referred to as DHRS) which construes the participation agreement between the parties to deny the hospital retroactive monies for medicaid services rendered.
Since February 27, 1974, the hospital, a non-profit Florida corporation, has been certified to participate in the Florida Medicaid Program. DHRS or its predecessor agencies has been a “state agency” as defined in 42 U.S.C. § 1396a(a)(5) and charged under Section 409.266(2)(a), Florida Statutes (1973) with the formulation of the Florida State Plan for Medical Assistance and with the ongoing responsibility for the administration of the Florida Medicaid program. This action arose out of claim by the hospital for additional medicaid reimbursement for covered inpatient hospital services provided to medicaid patients during its fiscal years ended March 31, 1975 through 1980 inclusive.
In January 1980, the hospital filed two companion administrative petitions. The first case was a rule challenge questioning the validity of Fla.Admin.Code Rule 10C-7.-39(5) which governed and placed percent limitations upon the amount of medicaid reimbursement payable for inpatient hospital service. Said rule was repealed on July 21,1981, and then DHRS amended its State Plan to comply with the medicaid act and its regulations. The second action sought to recover monetary damages from DHRS. The hospital alleged that DHRS had reimbursed the hospital less than the hospital was entitled to receive under federal and state laws and regulations, the federally approved state plan and the “Participation Agreement”. The parties entered into a prehearing stipulation where DHRS admitted to paying the hospital less and the parties agreed to determine the amount in November 1980 and stayed the other action until such time. On June 1,1981, the hospital refiled its rule challenge and by order dated June 26, 1981, the actions were consolidated. The actions were heard on August 3, 1981 at a hearing. On December 1981, the hearing officer issued a final order finding that the DHRS rule conflicted with state and federal law and was an unlawful exercise of legislative authority.[1] The rule invalidation was published on January 15, 1982. The hearing officer also found that during the period in dispute, DHRS was required to reimburse hospitals for their reasonable costs of providing inpatient hospital services as determined by using medicare cost reimbursement principles; that DHRS consistently reimbursed less than the hospital’s reasonable cost; that DHRS was aware of such practice; and that DHRS admitted to U.S. Dept, of Health and Human Services that it was administering its program out of compliance. The hearing officer denied the hospital’s monetary damage prayer in its recommended order, it *570 stated that provisions of the Participation Agreement permitted payment less than the reasonable cost of services. The Agreement does reveal that no retroactive corrective adjustments will be made for underpayments. The Agreement further provides that the exclusive remedy for underpayments rests in petitioner’s right to offset any underpayment against overpay-ments occurring in the following year.[2] *571 DHRS by final order, approved the recommended order and adopted it as its own.[3] From that final order the hospital appeals.
The hospital was on notice at least as early as May 3, 1976 that they were not being reimbursed these additional amounts, except as an offset against any possible repayment that might be due the state. No claim for the additional expense appears in the record until they filed their petition on January 18, 1980.
The contract is subject to the construction that this additional charge factor could only be collected against overages. The parties by their conduct for a period in excess of four years treated the contract with such an interpretation and lastly this would be a correct interpretation because the contract clearly indicated that the state agency could only spend monies appropriated by the legislature. The percentage factor they received, was in fact, that which the legislature approved. Blackhawk Heating and Plumbing Co., Inc. v. Data Lease Financial Corp., 302 So.2d 404 (Fla.1974); Lalow v. Codomo, 101 So.2d 390 (Fla.1958); Advisory Opinion to the Governor, 156 Fla. 45, 22 So.2d 397 (1945); State v. Lee, 121 Fla. 360, 163 So. 859 (1935); Shouse v. Doane, 39 Fla. 95, 21 So. 807 (1897); Florida Fruit & Vegetable Self-Insurers Fund v. Rolling Meadow Ranch, Inc., 424 So.2d 195 (Fla. 5th DCA 1983); Article VII Section 1(c) Constitution of the State of Florida (1968).
Therefore, for these reasons, the final order under review is hereby affirmed.

. This phase of the controversy is no longer involved in this cause.

. The hearing officer’s recommended order reads in part as follows:
THE MERITS
The parties have stipulated that petitioner has been reimbursed by respondent less than its reasonable costs of providing covered inpatient hospital services over the time period in question. Under-reimbursement of this kind is not authorized by Section 409.266, Florida Statutes, which incorporates the federal statutory requirement that hospitals which, like petitioner, provide Medicaid services be reimbursed by respondent for reasonable costs incurred, in accordance with an approved State Plan, and not some lesser amount. 42 U.S.C. § 1396a(a)(13)(B), Pub.L. 89-97, § 121(a) re-designated 42 U.S.C. § 1396a(a)(13)(D), Pub.L. 90-248, § 224(a). All Florida “State Plan provisions ... approved by HEW and ... gov-ernpng] HRS’s reimbursement of inpatient hospital services prior to July 1, 1981, ... commit HRS to reimburse hospitals [like petitioner] that also participated in the Medicare program for their reasonable costs of providing inpatient hospital services to Medicaid patients, applying Medicare cost reimbursement principles and standards.” Prehearing Stipulation, § 19.
The record is clear. Respondent consistently reimbursed petitioner less than its reasonable costs of providing inpatient hospital services in order to cut its own expenses and in doing so jeopardized the entire Medicaid program. This cannot be condoned, even though respondent acted under color of law, viz., Rule 10C-7.-39(6), Florida Administrative Code [now repealed and declared invalid; see Pan American Hospital Corporation v. Department of Health and Rehabilitative Services, No. 81-1480R (DOAH; December 4, 1981) ], and even though a lack of money or, at least, an apparent shortage was the reason for respondent’s parsimony.
The question remains, however, whether this dereliction on respondent’s part should inure to the benefit of petitioner; and the answer turns on the construction of the agreement between the parties attached as an appendix to this order. Petitioner argues cogently that public policy has clearly been enunciated by statute to be full reimbursement for costs reasonable incurred by Medicaid providers in furnishing covered services. There can be no clearer expression of public policy than' a statute duly enacted; and the reasons behind the full reimbursement policy are themselves compelling: to deal fairly with the providers, not only for fairness’ sake, but also to assure their participation in the program, and to remove any temptation to give indigent patients sub-standard care, inter alia. But, there is surely an overriding public policy requiring that a contractor with state government who voluntarily agrees to forego a claim against the public fisc be held to that agreement in administrative proceedings like these.
The form agreement between petitioner and respondent, which they renewed annually, states: “It is understood that reimbursement will be made on the basis of an interim payment plan in the form of a per diem cost rate, plus a percentage allowance for the year in lieu of retroactive payment adjustment. However, ... in the event the hospital did not receive its audited reasonable costs in the year prior to the current year then the hospital may deduct from the refund the prior year deficiency.” (Emphasis supplied.) The agreement thus contemplated under-reimbursement and specified the method for recoupment, if there was to be any. Any “retroactive payment adjustment,” as the result of administrative proceedings or otherwise, is specifically ruled out. Elsewhere in the parties’ agreement is found this language: “[T]he fiscal responsibility of [respondent’s] Division of Family Services is subjected [sic] to the appropriation and availability of funds to the Medicaid program ... by the state legislature every year.” The terms of the agreement make clear that under-reimbursement is not in itself a breach. Respondent’s failure to compute annually a “new percentage ... based on hospital cost trends” was attributable to a shortage of funds; and the agreement provided that respondent’s “fiscal responsibility” was subject to just such a shortage. In sum, provisions of the agreement petitioner voluntarily entered into with respondent operate in much the same way as a liquidated damages clause and preclude the relief petitioner seeks.
Petitioner’s invocation of the parol evidence rule is unavailing. Even if the stipulated facts outside the four corners of the form agreement are looked to, the course of dealing between these parties buttresses the construction outlined above. The fact that respondent may have settled a case it litigated against another hospital in some other way, as asserted by petitioner, is technically irrelevant.
RECOMMENDATION
Upon consideration of the foregoing, it is RECOMMENDED: That respondent deny the prayer of the petitioner for additional reimbursement.

. The final order reads as follows:
FINAL ORDER
The Department of Health and Rehabilitative Services, finding the Recommended Order to be correct and being otherwise well advised in the premises, hereby adopts the findings of fact and conclusions of law of the attached Recommended Order entered in this cause by Hearing Officer, Robert T. Benton II, dated December 10, 1981, and said Order is hereby declared to be and by this Order becomes the Final Order of the Department.
The Exceptions submitted by the Petitioner are addressed as follows:
1. Concerning Petitioner’s Exceptions to the Findings of Fact, the Department agrees that the facts should be changed to reflect that Petitioner became a Medicaid Provider on February 27, 1974, not January 27, 1974. The other Exceptions submitted by the Petitioner are without merit. The hearing officer’s Findings of Fact are supported by competent, substantial evidence in the record. The Proposed Facts contained in the Exceptions submitted by Petitioner are subordinate, cumulative, inornate-rial and unnecessary for the determination of this proceeding. Additionally, the Parties to this proceeding filed a STIPULATION and AGREEMENT specifying that there were no disputed issues of material fact and reflecting that there had been a stipulation to the facts involved. The parties further agreed that the proceeding could continue before the Division of Administrative Hearings pursuant to Section 120.57(1), Florida Statutes, even though there was a lack of disputed issues of material fact. 2. The exceptions to the Merits (Conclusions of Law) submitted by Petitioner are without merit. The Medicaid Participation Agreement entered into between the parties to this proceeding legally governs this case. That agreement was voluntarily entered into by the parties. It expresses an intent to reimburse hospitals participating in the Medicaid Program their reasonable covered costs as required by federal statutes and regulations. Therefore, the Participation Agreement is not in violation of the Medicaid laws or contrary to public policy. The Agreement does reveal that no retroactive corrective adjustments will be made for underpayments. The Agreement further provides that the exclusive remedy for underpayments rests in Petitioner’s right to offset any underpayment against overpayments occurring in the following year. The Agreement also specifies that payments are subject to appropriations and the availability of funds. This agreement and its specific provisions regarding underpayments were voluntarily consented to by Petitioner when it contracted with the Department. Petitioner’s claims for additional Medicaid reimbursements are governed by the Provider Agreement and its legal arguments to the contrary are specifically rejected.