# NOVEMBER TERM, 1892. 153

Smith *et al. v.* The Board of Commissioners of Miami County.

## No. 696.

## SMITH ET AL. *v.* THE BOARD OF COMMISSIONERS OF MIAMI COUNTY.

BRIDGES.—*Construction of.—Supplemental Contract for.—Right to Make.—Effect of.—County Commissioners.*—A board of county commissioners, after giving due notice as required by law, contracted with the lowest responsible bidder for the erection of the substructure for a bridge, consisting of two abutments and a pier, for a certain price per cubic yard for the masonry, and, also, a stipulated price per cubic yard for the excavations for the abutments and pier, and the timber used to place the abutments and pier on at so much per thousand feet, all of the work done and materials furnished to be subject to the approval of the county engineer; and on account of a bed of quicksand, which necessitated the driving of piling for a foundation for the pier, said board of commissioners entered into a contract supplemental to the original, for the furnishing and driving of said piling, at a stipulated price per lineal foot, the quantity of the timber used and the depth to be driven to be determined by the county engineer, the piling, after driven, to be cut off square under the bed of the river, etc., and said contract expressly stipulated that it shall be supplemental to, and shall not make void or change, the original contract, except as to the time of completion; and the county engineer ordered a certain number of piling of different lengths to be furnished and driven and cut off as stipulated, which was done.

Should the county pay for the tops of the pilings cut off as well as for what remained in the ground under the bed of the river? Did the supplemental contract impose any additional duty or give any further compensation than that imposed or given in the original contract? and was the supplemental contract legal, being made without notice, survey, estimate of the work, or additional bond?

*Held,* that there was nothing in the supplemental contract which limited the pay to the pilings remaining under the bed of the river and in actual use as a foundation for the pier, and that the county was liable for the tops cut off, even if they were not in the letter of the contract, as the engineer who ordered the piling was the agent of the county, and the county would not be permitted to take advantage of its own acts which were in excess of the terms of the contract.

*Held,* also, that the supplemental contract served to interpret the original contract, which, in the light of the supplemental, did not contemplate the driving of piling, but the converse, and that the furnishing and driving of piling, etc., was an additional burden which called for additional compensation.

*Held*, also, that the contract supplemental to the original, for the making of a foundation for the pier, by the use of piling, is not such a departure from the original as to require new notice, being an amendment to cure a deficiency in the original contract, and is clearly valid.

SAME.—*Construction of.*—*Separate Contracts.*—The statute does not require that a bridge shall be constructed under one entire contract, but separate contracts may be made with reference to distinct parts of the structure.

MUNICIPAL CORPORATION.—*Contract.*—*Must Conform to Statute.*—A public corporation, in executing a power the manner of which is prescribed by statute, must proceed in accordance with the law, or the act will be void.

CORPORATION.—*Contracts of.*—*Ultra Vires.*—*Rule as to.*—The doctrine of *ultra vires*, in whatever form interposed, is regarded with disfavor by the courts, and a recovery is permitted for money, property or labor on an implied agreement to pay for the same as much as it is reasonably worth; and this rule applies to public corporations as well as to private.

OFFICERS.—*Notice of Authority of.*—In dealing with public officers, all persons are bound to take notice of their official and fiduciary character, and that such officers can only bind the corporation which they represent by contracts which are authorized by law; and there is a wide difference between the contracts of municipal corporations and those of a private corporation.

From the Miami Circuit Court.

*J. F. McCray* and *C. A. Cole*, for appellants.

*R. P. Effinger* and *J. M. Brown*, for appellee.

LOTZ, J.—The appellants filed with, and presented to, the Board of Commissioners of Miami county a claim against said board for moneys alleged to be due them on account of the construction of the foundation of a pier for a bridge across Eel river. The claim was disallowed by the board, and appellants then appealed to the Circuit Court. In the Circuit Court appellants filed an amended complaint in three paragraphs. The appellee demurred separately to each of the amended paragraphs. The court sustained the demurrers, to which rulings the appellants excepted, and, refusing to plead over, a final judgment was rendered against them. These rulings of the court are assigned as error.

So much of the amended first paragraph as presents the controlling questions of this case may be stated as fol-

lows: On the 15th day of July, 1885, after having given due notice, as required by law, of the letting of a contract, the board awarded to appellants the work of constructing the substructure of a bridge over Eel river, on a highway in said county, appellants being the lowest 'responsible bidders for said work. The appellants and said board then entered into a written contract for the construction of said work according to the plans and specifications thereof then on file in the auditor's office of said county. A copy of said written contract was filed with, and made a part of, the pleading. Appellants also filed their bond, conditioned for the faithful performance of said contract, with surety, which was approved by the board. On the 5th day of October, 1885, appellants entered into another contract with said board. This contract is described as being supplemental to the first contract. A copy of this second contract was also filed with, and made a part of, the pleading. By the terms of the first, or original contract, the appellants, among other things, agreed "to make all necessary excavations and furnish all the stone and other materials, and build abutments and one pier, for a bridge across Eel river, at Pettysville, Miami county, Indiana, on or before October 15th, 1885, according to the plans and specifications thereof on file in the auditor's office, in said county, * * * at and for the following prices: eight dollars and thirty-six cents per cubic yard, to be measured in the wall, solid measure, to draft lines so as to obtain the actual cubic contents; eighteen cents per cubic yard for the dry excavation and seventy-three cents per cubic yard for the wet excavation. The wet excavation for the pier shall begin at the bottom of the water in the river. The wet excavation of the abutment shall begin at the low water line of the river. The timber used to place the abutments and pier on shall be good, sound oak, and the said H. C. Smith & Co. shall receive therefor sixteen dollars and seventy-five cents ($16.75) per thousand, board

measure. * * * All the materials furnished and work done shall be to the approval of the county engineer, and he shall have the right to reject any and all materials and work done not fully up to the requirements of this contract."

The essential parts of the second or supplemental contract is as follows : " This supplemental agreement made by and between the firm of H. C. Smith & Co. * * * and the Board of Commissioners of Miami county, Indiana, witnesseth : that, whereas, on the 15th day of July, 1885, said H. C. Smith & Co. made an agreement with said Board of Commissioners to make all the necessary excavations and furnish all the materials, and build and complete, for said Board of Commissioners of Miami county, Indiana, the two stone abutments and pier in the middle of the river, for an iron bridge, to be built thereon, across Eel river, at Pettysville, in Miami county, Indiana, * * * and, whereas, owing to the fact that there is a bed of quicksand in the river at the point where said pier is to be built, which makes it impossible to obtain a solid foundation to build said pier upon without driving piling therein, which fact was not taken into consideration when the said agreement was made : now this supplemental agreement, made by and between the said parties, witnesseth, that the said H. C. Smith & Co. agree * * * with said Board of Commissioners, * * * to furnish all the material and tools, including pile-driver, necessary to properly drive piling in said river, for a foundation for said pier; that the piling shall be of sound hard wood, free from splits or windshakes, and from bark, either buck, sugar or oak, not less than ten inches in size. The number of them shall be determined by the county engineer or superintendent in charge of the work, and they shall be driven to such depth as will make a solid foundation to build the stone pier upon, of which the said county engineer or superintendent in charge shall be the sole

judge, without question. They shall be cut off square at the top under the bed of the river, such a depth from the top as said engineer or superintendent in charge shall direct, and be filled with concrete, and tamped so as to form a bed to build said pier on, all of which shall be done by the 20th day of December, 1885. In consideration of which said Board of Commissioners agree to [pay] H. C. Smith & Co. therefor sixty-five cents per lineal foot for each piece of piling so driven, to be measured by said county engineer or superintendent in charge, which payment shall be made when said work is completed, to the approval of said county engineer and said Board of Commissioners. It is hereby agreed that this contract shall not abrogate, make void or change the contract made by said parties on July 15, 1885, save as to the time of the completion of said pier and abutments, which shall now be completed by the first day of December, 1885, provided that the engineer or superintendent in charge shall stop said work at any time when, in their judgment, the weather is unsuitable for laying stone, but the same is with the exception simply supplemental and additional thereto."

The further allegations are, that after the execution of said supplemental contract appellee's superintendent in charge of said bridge directed appellants to procure and deliver at the location of said bridge forty-eight pieces of piling, each eighteen feet in length, and thirty-six pieces, each twenty-three feet in length; that said piling was then inspected, measured and approved by said superintendent in charge; that appellants did thereupon procure a pile-driver and proceeded to, and did, drive all of said piling as stipulated in said contract, and under the direction and to the approval of said superintendent; that appellants have performed all and singular the stipulations of said original and supplemental contracts on their part, and completed the said work therein contracted for, according to the plans and specifications thereof, and that

before the filing of their claim with the auditor of said county, the said work had been accepted by said superintendent and by the said Board of Commissioners; that the lineal measurement of all of said piling purchased, driven, and used as aforesaid, was sixteen hundred and ninety-two feet; that of said amount nine hundred and eighty-four feet was left remaining in the ground below the bed of the river, to serve as a foundation for said pier, and the remaining seven hundred and eight feet were, under the direction of the superintendent in charge, cut off under the bed of the river, as stipulated in said contract, and thrown away as worthless; that the board has paid the appellants, for nine hundred and eighty-four feet of said ·piling, the sum of $639.60, but has refused to pay them for the remainder of said piling, and that there is due therefor and unpaid the sum of $460.20, with interest thereon, as shown by an itemized statement filed with the pleading, marked " Exhibit D." This exhibit shows the Board of Commissioners indebted to the appellants for sixteen hundred and ninety-two feet of piling, at sixty-five cents per lineal foot, amounting to the sum of $1,099.80, with a credit of $639.60, leaving a balance due of $460.20. Judgment is asked for this sum, with interest thereon.

It is contended by appellee that this paragraph is insufficient to withstand a demurrer, for the reason that the original or first contract requires the appellants to construct the abutments and pier for a bridge across Eel river; that its performance would have accomplished this object, and nothing further would remain to be the subject of a further or supplemental contract; that no extras or contingencies whatever are provided for or alluded to in the first contract.

It is true that, by the terms of the original ‚contract, appellants agreed " to furnish all the stone and other materials, and build abutments and one pier for a bridge across Eel river, according to the plans and specifications thereof

on file in the auditor's office." The language here employed is comprehensive. If one agrees to build a pier at a given point for a given consideration, without more, ordinarily the obligation resting upon him is to complete the pier for the contract price, and the foundation for the pier being an essential part of it, he must construct it, no matter what obstruction or difficulties may exist. Under such circumstances, the law presumes that the parties have considered all possible exigencies, and have protected themselves against loss in fixing the contract price. If the original contract comes within this rule, then appellant's position is correct. Is this contract so plain and simple that it needs no rendering? Where there is no confusion there is no occasion for construction. That which is plain and simple can not be made more so by explanation. In considering this contract, all of its parts must be kept in view. The contract price is not for a sum in gross, but the compensation depends upon the number of cubic yards of masonry, and the number of cubic yards of dry and wet excavation, and of the number of feet of timber used. It is silent as to the use of piling; nor does the use of piling seem to have been in contemplation, for it is provided that "the wet excavation of the pier shall begin at the bottom of the water in the river."

It became necessary, according to the allegations, in order to properly construct the pier, to make use of piling. In the science of engineering, piling and excavating are reverse conditions. One is to heap up and the other is to depress or hollow out. Only one of these terms was considered in fixing the compensation. Again, where the parties have the legal right to make a contract, and the terms of it are ambiguous or uncertain, they also have the right to construe it for themselves, and the practical interpretation put upon it, as shown by their acts and conduct, is entitled to great, if not controlling, weight. *Ingle* v. *Norrington,* 126 Ind. 174; *Vinton* v. *Baldwin,* 95 Ind. 433;

*Ætna Life Ins. Co.* v. *Nexsen*, 84 Ind. 347; *Johnson* v. *Gibson*, 78 Ind. 282; *Reissner* v. *Oxley*, 80 Ind. 580; *Willcuts* v. *Northwestern, etc., Life Ins. Co.*, 81 Ind. 300.

By the second or supplemental agreement it is expressly stipulated that " owing to the fact that there is a bed of quicksand in said river at the point where said pier is to be built, which makes it impossible to obtain a solid foundation to build. said pier upon without driving piling therein, which fact was not taken into consideration when said agreement was made." This, we think, is a practical construction put upon the first contract by the parties themselves, and is of controlling force in reaching the intention of the parties in making it. This doctrine has been so often asserted and enforced by the courts that it needs no further citation of authority to support it. We conclude that it was not the intention of the parties that appellants should construct the pier at all events, with or without piling, when the first contract was executed. If the appellee has paid all that it agreed to pay under the second contract, the pleading is still insufficient.

The allegation is that appellants purchased and drove sixteen hundred and ninety-two feet of piling; that of said amount nine hundred and eighty-four feet were left remaining in the ground below the bed of the river to serve as a foundation for said pier, and that the remaining seven hundred and eight feet were cut off under the bed of the river, as stipulated in the contract, and thrown away as worthless; that appellee has paid to appellants the sum of $639.60 for nine hundred and eighty-four feet, but has refused to pay for the remainder, or for seven hundred and eight feet. If the proper construction of the second or supplemental contract be that the appellee should pay only for the piling actually used for the pier and remaining in the ground below the bed of the river, after its completion, then this paragraph is insufficient, for the appellee has paid all that it contracted to pay. The contract requires the

appellants to furnish all the materials and tools, including a pile-driver, the piling to be of sound, hard wood, free from splits or windshakes, and from bark, not less than ten to fourteen inches in size, the number of them to be determined by the county engineer in charge of the work, and to be driven.to such depth as will make a solid foundation, of which fact the engineer shall be the sole judge, without question; they shall be cut off square at the top, under the bed of the river, such a depth from the top as the engineer shall direct; in consideration of which the appellee agreed to pay the appellants " sixty-five cents per lineal foot for each piece of piling so driven." Here is a promise to pay for each lineal foot that may be driven. It is not limited to that part that remains under the bed of the river after the tops shall be cut off. It is also apparent that the engineer in charge of the work is given a very large discretion of the manner in which the work should be done, and of the quality and amount of material to be used. It is expressly stipulated that the number of the piling shall be determined by him. He is given a large discretion and ample authority in both the first and second contracts. Appellants are required to work under his direction. These facts—taken in connection with the averments that appellee's superintendent directed appellants to procure and deliver at the location of said bridge a certain number of piling of certain lengths, and that in pursuance of such request appellants did procure and deliver said piling, and said piling was inspected, measured and approved by said superintendent, and that, under the direction and approval of said superintendent, appellants did drive all of said piling, and that said work has been accepted by said superintendent and by said board—make a strong presentation that it was not the intention of the parties to limit the pay to the piling actually remaining in the pier after its completion. The character of the work

to be performed was such that the extent thereof was necessarily indefinite. The board wisely left the question of materials, the manner of performance and the extent of the work largely in the discretion of its supervising engineer. The appellants were bound to follow his direction, and were to receive compensation according to the quantity of material furnished and the work performed. The engineer was the agent of the board. Even if he exceeded the terms of the contract and required appellants to furnish material and perform work not within its letter, it does not follow that appellants should be denied the right to recover. It would be highly inequitable for the county to receive the benefit of the work and materials procured by the direction of its own agent, and deny the right of recovery because the same was in excess of the terms of the contract. And it would also be highly inequitable for the county to say that it will not pay for materials furnished or work done because its agent made a mistake or required more to be furnished and done than was necessary. That the superintendent is the agent of the county, and that he may bind the county for materials and work in excess of the contract price, is well settled by authority. *Board, etc.*, v. *Byrne*, 67 Ind. 21; *Board, etc.*, v. *Hill*, 122 Ind. 215; *Board, etc.*, v. *Motherwell Iron, etc., Co.*, 123 Ind. 364.

Considering the first and second contracts in conjunction with the averments of the complaint, we think that the piling cut off and thrown away was within the letter and spirit of the contract. If any extraneous matter existed that takes it out of the contract, that may be set up in an answer. But there is a still more serious objection urged to the supplemental contract, had the board the power to make it? Was it *ultra vires?* The power to build bridges over water courses is expressly given to boards of county commissioners, by section 2885, R. S. 1881. A pier is any detached mass of masonry or piece of wall between two

openings, used to support any structure.  A solid and secure foundation is essential to its existence.  The foundation of a pier and the pier itself are a part of the bridge, as much so as the approaches and embankments leading thereto.  The approaches and embankments leading to and immediately connected with a bridge, within reasonable limits, are a part of it.  *Board, etc.,* v. *Rushville, etc., Gravel Road Co.,* 87 Ind. 502; *State, ex rel.,* v. *Demaree,* 80 Ind. 519; *Driftwood, etc., Turnpike Co.* v. *Board, etc.,* 72 Ind. 226.

If the board had the power to let a contract for the construction of a bridge, it also had the power to make a contract for the construction of piers and abutments. There is nothing in the statute that requires the contract for the construction of a bridge to be let as an entirety. The statute should be construed to the advantage and best interest of the county.  It is well known that in building all large structures, certain portions of the work can be performed more economically by those persons who are prepared to do such work, and make such portions a specialty.

Where a power is granted to a public corporation to do a certain thing, and the manner of executing the power is prescribed by law, the method prescribed must be pursued or the act will be void.  *Platter* v. *Board, etc.,* 103 Ind. 360; *Leonard* v. *American Ins. Co.,* 97 Ind. 299; 1 Dillon on Munic. Corp. (3 ed.), section 449.

The statute prescribes the mode in which the power to build bridges shall be exercised by the board of county commissioners.  It shall cause a survey and estimate to be made; it shall appoint a superintendent or superintendents, and such superintendent shall, after giving thirty days notice, receive sealed proposals for the work, and let the same to the lowest responsible bidder, and require him to give bond, with surety, for the due performance of the work. Sections 2885, 2888 and 2890, R. S. 1881.  It is a condition

precedent to the exercise of this power that the notice of the letting of the contract shall be given. The averment is that the board made the first or original contract after having given due notice, as required by law, of the letting of said contract. There is no averment that there was any notice of any kind given of the letting of the second or supplemental contract, or that any survey or estimate of the work was made, or that any bond to secure its due performance was taken. If the supplemental contract is independent ánd wholly disconnected from the first contract, then it is void under the rule above laid down. But supplemental is that which supplies a deficiency, meets a want, or completes that which is already organized. After having given due notice of the letting of the original contract as required by law, and after having let the contract, .an unforeseen difficulty aries, or the board or its superintendent desires to make changes in the plans for the betterment of the work, must a new notice be given of the letting of a contract covering the changes? The manifest object of the statute, in requiring notice to be given of the letting of the contract for the construction of a bridge, is to secure the best and most favorable contract for the county. By this means competition is secured, and partiality avoided. In this way the best interests of the county are subserved. But, in enforcing this rule, it should not be pushed to the extent of defeating its purposes, and inflicting on the county positive harm and injury. There are many contingencies against which human foresight can not provide, and the highest degree of wisdom only comes from experience. After the contract for a public structure has been duly made, and as the work of construction progresses, an obstacle arises, or if it be seen that if the work be completed according to the contract it will be insufficient or defective, or that by making slight changes the value of the work can be much enhanced, the board ought to have the power to make such changes without

giving further notice. If it have not, then will the public work be delayed and the county often suffer loss. This power of making changes or new contracts without notice must not be carried to such an extremity. If the new contract covers substantially the structure in contemplation, then notice must be given and the statute in other respects complied with. We do not consider the making of a foundation for a pier, by the use of piling, such a departure from the original contract as to require new notice and new surveys and plans. In reaching this conclusion we do not overlook the principle that in dealing with public officers all persons are bound to take notice of their official and fiduciary character, and that such officers can only bind the corporation which they represent, by contracts which are shown to be authorized by law. Nor do we forget that there is a wide difference between the contracts of a corporation charged with governmental functions and the contracts of private corporations.

The doctrine of *ultra vires*, no matter how interposed, is always " ungracious and odious." It is looked upon with disfavor by the courts, for it enables the corporation to repudiate its contracts and take advantage of those who have dealt with it in good faith. *Prima facie*, all contracts of corporations, public or private, are valid, and it is incumbent on those who impeach them to show that they are invalid.

Public corporations, in their contractual as well as their other relations, enjoy a higher degree of respect in the eyes of the law than private corporations. They can only contract to promote the public interest. *Ultra vires* from such source does not come with such an ill grace as from a corporation whose principal object is to promote its own interest. The object of the law is to promote justice and honest dealing, when that can be done without violating principle. And " the doctrine of *ultra vires* does not absolve municipal corporations from the principles of com-

mon honesty." *Bass Foundry, etc.,* v. *Board, etc.,* 115 Ind. 234.

To relieve against the injustice and hardship that often results from this doctrine of *ultra vires,* the law permits a recovery for money, property or labor on an implied agreement to pay for the same so much as it is reasonably worth. This rule applies to public corporations as well as to private. The fact that a corporation is one of the instruments of government does not give it license to perpetrate a wrong, and appropriate the property or labor of another because such person may have been laboring under a misapprehension as to his legal rights.

If we should be mistaken in our view as to the validity of the supplemental contract, still the pleading is broad enough to include a right to recover for materials furnished and labor done which has inured to the benefit of the county. A full history of all the transactions between appellants and the board is given. It appears that appellants furnished piling of certain kinds and lengths, at the request of the board, and drove the same under its direction, and has never received the full pay therefor. The county must pay the reasonable value thereof. This position is well supported by authority. *Schipper* v. *City of Aurora,* 121 Ind. 154; *Bass Foundry, etc.,* v. *Board, etc., supra; Board, etc.,* v. *Motherwell Iron, etc., Co., supra; Board, etc.,* v. *Hill, supra; Board, etc.,* v. *Verbarg,* 63 Ind. 119.

We think the court erred in sustaining the demurrer to the first paragraph of the amended complaint. The second and third paragraphs differ somewhat from the first, but they contain all of its essential averments, and, for the reasons given, the demurrers should have been overruled.

The cause is reversed, with instructions to overrule the demurrers to each paragraph of the amended complaint.

Filed January 31, 1893.