E. P. HOLMES. *et al.*, *Plaintiffs in Error*, v. STEARNS LUMBER & EXPORT CO., A CORPORATION, *Defendant in Error*.

Opinion Filed November 4, 1913.

When the terms of a written contract are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter, or in a given emergency, and the parties to it have by their conduct placed a construction upon it which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract.

Writ of error to Circuit Court, Escambia County; J. Emmet Wolfe, Judge.

Judgment affirmed.

*J. C. Avery*, and *Reeves* & *Watson* & *Pasco*, for Plaintiffs in error;

*Blount* & *Blount* & *Carter*, for Defendant in error.

SHACKLEFORD, C. J.—Stearns Lumber & Export Co., brought an action at law against E. P. Holmes and Fred Herrick, partners under the firm name of Holmes & Herrick, whereby it was sought to recover damages alleged to have been caused the plaintiff by the failure of the defendants to comply with the terms of a certain contract relating to the sale and delivery of lumber by plaintiff to defendants. The questions presented here for determination relate exclusively to certain rulings made on the pleadings. Both the plaintiff and defendants would seem to have been afforded every opportunity for perfecting and filing their respective pleadings, and no complaint is made on that score. The declaration was amended and successive sets of pleas were filed. Finally, the following proceedings were had:

"Now on this Feb. 28th, A. D. 1913, the day this cause was set for trial came the respective parties by their attorneys, and the plaintiffs demurrer to the additional pleas, filed Feb. 21st, 1913, numbered one, two, three and four, to the third and fourth amended counts of plaintiffs declaration, coming on to be heard, and the counsel for the respective parties having submitted same to the court, and the court being advised of its opinion, it is, therefore, considered by the court that the said demurrer be and the same is hereby sustained to said pleas, and the plaintiff by leave of the court withdrew from the files the first count of its declaration and the defendants by leave of the court withdrew from the files their pleas of 'Never was indebted' to the first and second counts of the declaration, and also their plea of payment to said second count, and also, by such leave, withdrew their pleas numbered one and two to the third and fourth amended counts, and also, by such leave, withdrew their pleas which have been heretofore stricken on motion numbered three, four, five and six, seven and eight, all filed to the third and fourth amended counts of the declaration on Jan. 6th, 1913, and not desiring to plead further in this cause, and the plaintiff asking for judgment final upon demurrers to pleas filed to the second count and to the third and fourth amended counts of its declaration, judgment final upon said demurrers is hereby rendered against the defendants in favor of the plaintiff. Wherefore, it is considered by the court that the plaintiff ought to have and recover of and from the defendants their damages sustained herein by reason of the premises. Thereupon reference is had to a jury to assess the plaintiffs damages herein. Whereupon afterwards came the jurors good and lawful men to-wit: C. H. Seely, S. J. Strickland, M. F. Martin, E. C. Evans, Edward Allen and Barney Johnson, who being

duly elected, tried and sworn, well and truly to assess the plaintiffs damages herein and a true verdict render according to the evidence after hearing all the evidence adduced, the argument of counsel and the charge of the court, says: 'We the jury assess plaintiffs damages at the sum of One Thousand Dollars, being Four Hundred twenty-nine and 33/100 Dollars on the second count and Five Hundred Seventy and 67/100 Dollars on the third and fourth amended counts of the declaration.
Feb. 28th, 1913.'        E. C. Evans, Foreman.

Thereupon it is considered by the court that the plaintiff do have and recover of the defendants the foregoing sum of One Thousand ($1,000) Dollars together with the sum of Five 01/100 Dollars, here taxed as its costs in this behalf sustained all to be levied of the goods, chattels, lands and tenements of the defendants, and to the plaintiff rendered, and that execution do issue therefor.
Feb. 28th, 1913.        J. Emmet Wolfe, Judge."

The defendants seek to test this judgment by writ of error and have assigned fourteen errors, though all are not insisted upon. We have carefully read the transcript and the able briefs filed by the respective parties and have examined the authorities cited to us. We do not think it necessary to set out all of the pleadings or to discuss the various rulings complained of in detail. The real point involved is the construction of the contract entered into by the plaintiff and the defendants. The determination of that will render a discussion of the assignments separately unnecessary.

Very much condensed, the second count of the declaration, upon which part of the recovery was based, alleges that the defendants were due the plaintiff the sum of $400.00, the remainder of the purchase price for a certain cargo of lumber of about 1,000,000 feet, at a certain agreed

price. It is admitted by the defendants in their brief that the third and fourth amended counts of the declaration, un..er which the residue of the recovery was had, "are very much alike, except that the third count seeks to enlarge the contract by alleging that it was made with reference to a certain custom existing at the port of Pensacola, and in the third count it does not appear where the lighters were held or remained loaded, nor where the lumber was, nor was to be obtained by the seller." No point is made as to the correctness of the amount of damages assessed by the jury. As we have already said, we are called upon to deal only with the rulings of the court upon the pleadings.

We think it well to copy the fourth amended count in full, which is as follows:

"4. That prior to the institution of this suit defendants agreed to purchase from plaintiff a certain cargo of lumber of about 1,000,000 feet at certain prices then and there agreed upon to be delivered free alongside vessel stream-Pensacola, Florida for Feb.-March 1912 delivery, and defendants further agreed by said contract to give plaintiff not less than ten days notice prior to arrival of steamer taking such cargo, and to supply plaintiff with a sufficient amount of inspectors to load lighters as rapidly as plaintiffs should require 7 to 10 days before arrival of such steamer, and further agreed that in view of the fact that the shipment was named as Feb.-Mar., delivery as aforesaid they would keep plaintiff posted as to the exact charter or due date of vessel taking such cargo. That at the time of making said contract the parties knew that the lumber would be procured by plaintiff from mills at Bag dad, Florida; that said lumber would be inspected and loaded on lighters at said Bagdad, Fla., and transported therefrom by water a distance of thirty (30) miles, to the

bay of Pensacola, there to be delivered alongside vessel, as aforesaid, and in fact the said lumber was procured from mills at Bagdad, inspected and loaded upon lighters at said point, and transported to the bay of Pensacola to be delivered alongside of vessel stream as hereinbefore stated. That subsequent to the making of said contract to-wit, on Feb. 23-12 defendants notified plaintiff that they would move said lumber in the steamship Silverwings, that they were then unable to give probable date of the arrival of said vessel but thought she would arrive at the port of Pensacola about March 15-25th, and on Feb. 26-12 the defendants again notified plaintiff that they were advised by the owners of said Steamship that she was due at said port about March 15th, and that they would have a man there to commence loading the lumber on lighters for transportation to the ship on March 5th and to make arrangements accordingly; that in pursuance of these and subsequent directions from defendants the plaintiff proceeded to procure and load lighters with lumber for delivery to said ship upon her arrival on March 15th, and had, on said March 15th, lighters loaded and ready to deliver to the said vessel, but said steamer did not arrive at said port until March 27th in consequence whereof the lighters so loaded by plaintiff, amounting to twelve in number, remained loaded at defendant's request for a period of twelve days after said March 15th, and could not be used by plaintiff or the persons from whom plaintiff procured them during said period whereby the plaintiff was deprived of the use of said lighters of the reasonable value of $10.00 per lighter per day, for said period to plaintiff's damage in the sum of $1,000.00. And though defendants have been requested to pay plaintiff the reasonable value of the use of said lighters for the period aforesaid, they have declined so to do."

As we have previously said the third amended count also contained an allegation as to a certain prevailing custom at the port of delivery, which reads as follows:

"That subsequent to the making of said contract to-wit, on Feb. 23-12 defendants notified plaintiff that they would move said lumber in the Steamship Silverwings, that they were then unable to give probable date of the arrival of said vessel but thought she would arrive at the port of Pensacola about March 15-25th, and on Feb. 26-12 the defendants again notified plaintiff that they were advised by the owners of said Steamship that she was due at said port about March 15th, and that they would have a man there to commence loading said lumber on lighters for transportation to the ship on March 5th and to make arrangements accordingly; that in pursuance of these and subsequent directions from defendants the plaintiff proceeded to procure and load lighters with lumber for delivery to said ship upon her arrival on March 15th, and had, on said March 15th, lighters loaded and ready to deliver to the said vessel, but said steamer did not arrive at said port until March 27th in consequence whereof the lighters so loaded by plaintiff, amounting to twelve in number, remained loaded at defendants request for a period of twelve days after said March 15th, and could not be used by plaintiff or the persons from whom plaintiff procured them during said period whereby the plaintiff was deprived of the use of said lighters of the reasonable value of $10.00 per lighter per day, for said period to plaintiffs damage in the sum of $1,000.00. And though defendants have been requested to pay plaintiff the reasonable value of the use of said lighters for the period aforesaid, they have declined so to do."

These two amended counts were demurred to on various and sundry grounds, which demurrer was overruled, and

this ruling forms the basis of one of the assignments. In determining the correctness of this ruling we are necessarily called upon to pass upon the provisions of the contract as therein alleged and which are admitted to be true by the demurrer. In other words, do these two counts state a good cause of action? It should be borne in mind that we have not a copy of the contract itself before us, as it was not set out in the transcript but only the allegations of the declaration as to the terms and conditions of such contract. It is obvious from the two counts under consideration that the lumber so agreed to be purchased was to be delivered free alongside the vessel in the stream at Pensacola by the plaintiff to the defendants at any time between the first day of February and the 31st day of March, 1912, and that "defendants further agreed by said contract to give plaintiff not less than ten days notice prior to arrival of steamer taking such cargo, and to supply plaintiff with a sufficient amount of inspectors to load lighters as rapidly as plaintiff should require 7 to 10 days before arrival of such steamer, and further agreed that in view of the fact that the shipment was named as Feb.-Mar. delivery as aforesaid they would keep plaintiff posted as to the exact Charter or due date of vessel taking such cargo." Thus far it is clear and there is no controversy as to these agreements. How were they performed by the defendant? Again we copy the language used in each of such counts: "That subsequent to the making of said contract to-wit on Feb. 23-12 defendants notified plaintiff that they would move said lumber in the steamship Silverwings, that they were then unable to give probable date of the arrival of said vessel but thought she would arrive at the port of Pensacola about March 15-25th, and on Feb. 26-12 the defendants again notified plaintiff that they were advised by the owners of said steamship that she was due at said

port about March 15th and they would have a man there to commence loading the lumber on lighters for transportation to the ship on March 5th and to make arrangements accordingly." Was the plaintiff warranted in acting upon the notices as sufficient compliance by the defendants with their agreement as to notice, and proceeding to get ready and make the requisite arrangements for the delivery of the lumber, and thereby keep the agreement to be performed on its part, as it is alleged in detail that plaintiff did? It seems to us that an affirmative answer must be returned to this question. Evidently the defendants were of the opinion that at least the notice given by them on the 26th of February was sufficient, else they would not have stated that "they would have a man there (Pensacola) to commence loading the lumber on lighters for transportation to the ship on March 5th and to make arrangements accordingly." The plaintiff received and acted upon the notice, to its injury, as is alleged in the declaration, so that both the plaintiff and the defendants would seem to have regarded and treated the notice as a sufficient compliance with the contract. We held in Shouse v. Doane, 39 Fla. 95, 21 South. Rep. 807: "When the terms of a written contract are in any respect doubtful or uncertain, or if the contract contains no provisions on a given point, or if it fails to define with certainty the duties of the parties with respect to a particular matter, or in a given emergency, and the parties to it have by their conduct placed a construction upon it which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract." See also the authorities cited therein, and Mizell Live Stock Co. v. J. J. McCaskill Co.,

59 Fla. 322, 51 South. Rep. 547. We would also refer to the discussion of the point in 9 Cyc. 588. It is true that such notice was not absolutely specific and definite as to the date of the arrival of the vessel, and the defendants lay much stress upon the use of the word "about" therein. Even so, in the light of the cited authorities, looking at the construction placed upon the contract by the defendants themselves by their conduct, we are of the opinion that the plaintiff was warranted in acting upon the notice as a sufficient compliance with the contract. We must hold that the defendants were legally responsible for the damages occasioned the plaintiff. We have examined the case of Freeman v. Louisville & Nashville R. Co., 32 Fla. 420, 13 South. Rep. 892; White v. McMillan, 114 N. C. 349, 19 S. E. Rep. 234, and Bennett v. Lingham, 31 Fed. Rep. 85, cited and relied upon by the defendants, but we do not think that they support their contention. It follows that in our judgment, the two counts of the declaration in question state a good cause of action and were not open to the attack made on them by the demurrers.

We do not discuss the other assignments urged before us, but we have given them careful consideration and no reversible errors are made to appear to us.

Judgment affirmed.

TAYLOR, COCKRELL, HOCKER AND WHITFIELD, J. J., concur.