GLADES COUNTY, FLA., v. DETROIT FI-
DELITY & SURETY CO. et al.

I. W. PHILLIPS & CO. et al. v. SAME.
No. 6441.

Circuit Court of Appeals, Fifth Circuit.
March 31, 1932.

Rehearing Denied April 23, 1932.

E. D. Treadwell, of Arcadia, Fla., for Glades County, Fla.

Gates Ivy, of Tampa, Fla., for I. W. Phillips & Co. and Union Metal Manufacturing Co.

H. C. Tillman and Fred T. Saussy, both of Tampa, Fla., for Detroit Fidelity & Surety Co.

Claibourne M. Phipps, of Tampa, Fla., for H. C. Dwiggins.

Pasco Altman, of Tampa, Fla., for American Cyanamid Co.

Charles F. Blake, of Tampa, Fla., for Franz Safe & Lock Co.

Hilton S. Hampton and Jno. W. Bull, both of Tampa, Fla., for Kinnear Mfg. Co. and Cooke & Co.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Marshall-Jackson Company contracted with Glades county, Fla., to build a courthouse, with Detroit Fidelity & Surety Company, as surety on its bond. The county failed to pay when due certain sums owing to the contractor, he terminated the contract, and becoming bankrupt left a number of debts to materialmen unpaid. The surety

company filed a bill in the District Court in which the bankruptcy case was pending to have the sum owed by the county accounted for and paid to the materialmen in exoneration of the bond, making the trustee in bankruptcy a party by consent of his court, together with the county and the materialmen. The right to exoneration was upheld as against the county's motion to dismiss the bill and against its answer that it owed nothing, and the county appeals. Two of the materialmen, I. W. Phillips & Company and Union Metal Manufacturing Company, were awarded less sums than they claimed, and they also appeal.

 Glades county moved to dismiss the bill (1) because without equity; (2) because it sought to enjoin proceedings in a state court by the trustee against the county to collect the balance in dispute; and (3) because the jurisdiction of the bankruptcy court was invaded. The second ground was recognized, and the suit in the state court was left to take its course, but was afterwards abandoned. As to the first ground, the case is pleaded in two aspects. In the one aspect the surety company contends that the county has broken the contract by failure to pay the contractor as promised, and also has made changes in and additions to the work, whereby the surety is released, and that this makes a common defense against the suits threatened by the numerous materialmen, and to avoid a multiplicity of suits the defense should be established against all by one bill. In this aspect the bill has no merit. The exhibited contract for the work which is referred to in the bond and made a part of it provides that the county without invalidating the contract may make changes by altering, adding to, or deducting from the work, the contract price to be adjusted accordingly. The surety cannot complain at that being done which it was agreed might be done. The county's alleged breach of the contract by failing to pay might relieve the surety of obligation to the county, but is no defense against the claims of the materialmen. This is a contract for public work under the laws of Florida. By statute, Comp. Gen. Laws, § 5397, there is required of the contractor a penal bond "with the additional obligations that such contractor * * * shall promptly make payments to all persons supplying * " * labor, material and supplies, used directly or indirectly by the said contractor * * * or sub-contractors in the prosecution of the work provided for in said contract," and provision is made for a suit on the bond by such persons. The bond exhibited by the bill is conditioned that the contractor shall fulfill its contract with the county "and shall fully and promptly pay the wages of all laborers, workmen and mechanics employed by it or its subcontractors on said work, and shall fully and promptly pay the claims of all persons who furnish materials and supplies used in the construction of said building." The bond is plainly given under the statute and to be construed in the light of it. It operates as a security to the county for the performance of the contract, and also as a security to the laborers and materialmen for their payment, and in this sense embraces two bonds. Although the county may have so acted as to release the surety from obligation to it, the release does not affect the obligation to the materialmen. Having sold and delivered their materials on the faith of the bond, they are entitled to the benefit of it unless forfeited by some act of their own. The obligation to them is severable. Equitable Surety Co. v. United States, 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394. It follows that on the face of the bill the surety is liable to the materialmen, and the defense relied on as common to all turns out to be no defense. In its second alternative aspect, the bill, in case its defense of breach by the county fails, acknowledges liability to the materialmen and professes a willingness to pay them; but sets up the bankruptcy of the contractor, and that the trustee in bankruptcy insists that what is due by the county on the contract is general funds in bankruptcy not specially applicable to the claims of the materialmen, and is suing the county in a state court to collect and so apply them; and that the surety is about to have to pay the materialmen, but in equity is entitled to exoneration by use of the sum due from the county; and it seeks an account of the same and an application of it to the materialmen's claims, the surety to be held only for the balance. In this aspect the bill has equity. We are now dealing with the surety's obligation to the materialmen only. The principal has failed to discharge his obligation when due, is insolvent, and his representative in effect refuses to discharge it. As between the surety and the principal there arises without payment by the surety and without his having even been sued an equity of exoneration. Story, Eq. Juris. (14 Ed.), § 1011; Pomeroy, Eq. Rem., § 919; Stearns on Suretyship, § 281; Pavarini v. Title Guaranty Co., 36 App. D. C. 348, Ann. Cas. 1912C, 367 and note. To have subroga-

tion a surety must have discharged in full the obligation for which he is bound, and he then seeks to recover for himself the subject of the suit. In case of exoneration he proceeds before payment quia timet, and seeks to have payment made to the creditor. If the principal is solvent, the decree need not go further than to require the principal to pay, but, when he is fraudulent, insolvent, or has absconded, the equity of exoneration needs and may have further protection. Injunctions, receivers, and equitable garnishments have been granted, property recovered from third parties, and funds traced and applied. West v. Chasten, 12 Fla. 315; Hayden v. Thrasher, 18 Fla. 795; Bunting v. Ricks, 2 Dev. & B. Eq. (22 N. C.) 130, 32 Am. Dec. 699; Sanford v. U. S. F. & G. Co., 116 Ga. 689, 43 S. E. 61; Cooper v. National Fert. Co., 132 Ga. 529, 64 S. E. 650. Assuredly equity will require to be applied to the obligation a fund which by the very contract of suretyship stands as a security for performance. In Story Eq. Jur., § 1011, after stating the jurisdiction to protect the surety quia timet, there is added: "And generally it may be stated that in case of contracts, express or implied, courts of equity will interpose to preserve the funds devoted to particular objects under such contracts and will decree what is in effect specific performance, security to be given, or the fund will be placed under control of the court." In Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 457, 41 L. Ed. 865, it is held that: "Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation * * * creates an equitable lien upon the property so indicated." To the same effect is Ingersoll v. Coram, 211 U. S. 336, 29 S. Ct. 92, 53 L. Ed. 208. Such a fund is the reserve on a building contract. Pratt Lumber Co. v. Gill (D. C.) 278 F. 783, 798; Cox v. New England Equitable Ins. Co. (C. C. A.) 247 F. 955; Prairie State Bank v. United States, 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Salt Lake City v. O'Connor, 68 Utah, 233, 249 P. 810, 816, 49 A. L. R. 941. The first and last cited were cases of exoneration. In the last there is a comprehensive review of the authorities with the result thus stated: "We conclude that the unpaid contract price remaining in the hands of the city is charged with an equity in favor of the surety, which arose by virtue of the retention of the fund by the city and in point of time relates back to the time the contract of suretyship was entered into, and is superior and paramount to any right of the contractor or his assignee." Prairie State Bank v. United States, though a case of subrogation, clearly indicates the status of the reserved payments as a fund for the security both of the obligee and the surety on the bond. The contract in the case at bar contains the usual stipulations for paying out only 80 per cent. of the architect's estimates as the work progresses, and for permitting the county to withhold payments if laborers and materialmen remain unpaid.

Coming to the third ground of the motion to dismiss, if the bankruptcy court through the trustee as its officer had possession of the fund in dispute, the jurisdiction to determine the liens and equities against it and to dispose of it would have been in that court, and it could not over objection of parties before it have resigned jurisdiction to another court. United States Fidelity & Guaranty Co. v. Bray, 225 U. S. 205, 32 S. Ct. 620, 56 L. Ed. 1055. The objection in the case at bar is raised, not by the materialmen or trustee or other party to the bankruptcy case, but only by the county in the character of a debtor to the bankrupt. The bankruptcy court has not possession of the fund and could not effect the exoneration sought because it has not the thing which is to be applied in payment to the materialmen. It cannot get it, since it is adversely claimed by the county, without a plenary suit in another court, state or federal, in which the bankrupt might have sued if bankruptcy had not occurred. 11 USCA § 46; Bardes v. Hawarden Bank, 178 U. S. 524, 20 S. Ct. 1000, 44 L. Ed. 1175; Bush v. Elliott, 202 U. S. 477, 26 S. Ct. 668, 50 L. Ed. 1114. Moreover, the surety in the case at bar, as above shown, has an interest in the fund as a pledged security which arose out of the contract of suretyship, and which it may assert in its own right and not merely through the principal as would be the case if an ordinary debt were pursued by equitable garnishment. The surety has an equity based on its contract with the county, and a consequent right to be heard in any litigation that is to determine the existence and the amount of the county's liability under the contract. As the surety's right is only equitable, it must sue in equity, and, since there is diversity of citizenship and a sufficient amount involved, it may sue in the federal court. The county may thereby lose a local venue and a jury trial, but a federal

court of equity cannot consider that injustice is likely to result or withhold its aid for such a reason. Before the motion to dismiss was ruled on, by a stipulation filed in the case the county deposited with a bank $70,000 of city bonds in which the funds appropriated for the building of the courthouse had become invested, they or their proceeds to be held by the bank and disposed of subject to final decree in this cause. This stipulation which was recited in full in the court's order goes far to show a submission by the county to the jurisdiction and to place the court in possession of a res for disposition. We think the court did not err in retaining the bill for trial.

 The evidence sufficiently supports the equity asserted, but, touching the amount due by the county, we think the court erred in holding as conclusive the architect's monthly certificates of work done and material furnished, and the resolution of the county commissioners passed November 24, 1926, after default in payment whereby they undertook to provide means for paying the indebtedness of $37,322.15 appearing from estimates approved by the architect and presented to them. By a paragraph of the signed contract it is provided: "On or before the tenth day of each month 80% of the value proportionate to the amount of the contract of labor and materials incorporated in the work up to the first day of that month as estimated by the architect" is to be paid. By article 51 of the attached general conditions "the contractor is to be paid 80% of the estimated value of the work done and material furnished less previous payments at intervals agreed upon." By articles 9 and 10 the architect is given general supervision and direction of the work, and made in the first instance the judge of its performance, but all his decisions are made subject to arbitration. By article 38 the contractor is given the right to terminate the contract 90 days after default in payment by the county "and to recover from the owner (the County) payment for all work executed and any loss sustained upon any plant or material, and reasonable profit and damages." The contractor terminated the contract for default in payment by a notice presented on December 29, 1926, and the county's present liability is under the provision last quoted. The architect's monthly certificates were to fix tentatively the proportionate value of the work executed for purposes of installment payment and not to fix the final liability of the county for work and material upon the premature ending of the contract. His certificates have an evidentiary value, but are not conclusive for the present purpose. So the resolution of the commissioners is an admission having value as such, but is not conclusive. The issue presented by termination of the contract had not arisen at the date of the resolution, and the resolution is not a settlement or compromise thereof with the contractor. See City of St. Petersburg v. Meyers (C. C. A.) 55 F.(2d) 810. The court should have considered all the evidence produced, whether in explanation of the certificates and resolution, or tending independently to show the true amount of the liability under article 38.

 Much building material was on the ground when the work ceased in August. Some of it was lost in a hurricane during September, but most of it remained until during the following year the county resumed building through another contractor and furnished this material to him for use in completing the building. The county's liability for the material thus used is in question. The first architect's certificate made under the first contract did not include payment for material on the ground but not built into the building because not "incorporated in the work" as stated in the contract. The contractor thereupon contended that it was "material furnished" under article 51 of the general conditions. The contractor's contention prevailed with the architect, who thereafter included materials on the ground in his certificates for payment, and the commissioners with knowledge of the facts paid them. This was a practical construction of the contract by the parties to it that materials on the ground were to be considered as incorporated in the work, though not built into the building. The provisions of the contract are sufficiently doubtful to make this construction controlling. City of Chicago v. Sheldon, 9 Wall. 50, 19 L. Ed. 594; Smith v. Board of Commissioners, 6 Ind. App. 153, 33 N. E. 243; Holmes v. Stearns Lumber Co., 66 Fla. 259, 63 So. 449. The materials when delivered on the ground were at least tentatively turned over to the county on its agreement to pay for them if finally used. Article 48 of the General Conditions expressly provides that they cannot be removed without the consent of the county except surplus material after completion. The county is certainly estopped to deny that it owes the first contractor for such material as it finally furnished to its second contractor under the terms of the contract with him. This ma-

terial is properly to be included in the account against the county.

Whether other contested items, such as an allowance for money lost by the contractor in a bank failure and for his bond premium, were included or not, or whether they should be, we cannot satisfactorily tell from this record, and we leave them for further inquiry in the reopened accounting which must be had.

Upon the appeal of the materialmen it appears they were allowed recovery against the surety for such material as the first contractor built into the building, but not for such as the county used through the second contractor. We think they should recover for all material used by either. The statute under which the bond was given speaks of "material and supplies, used directly or indirectly by the said contractor * * * or subcontractors in the prosecution of the work." The bond says "material and supplies used in the construction of said building." The material in question was sold on the faith of the bond and was used in the building in terms of the bond, and, when delivered by the contractor to the county and by it used in furthering the work, the material was indirectly used by him in the terms of the statute as truly as though he had turned it over to a subcontractor to use. The materialmen were correctly held to have no right to a personal judgment against the county. They sold and delivered the material to the contractor and thereby lost title to it. The county acquired it from the contractor and owes him and not them for it.

The judgment on both appeals is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.