377 So.2d 743 (1979)
LANE, GELETY, WOOLSEY AND CENTRONE, P.A., INC., a Florida Professional Corporation, Appellant,
v.
Robert D. WOOLSEY, Appellee.
No. 78-1265.
District Court of Appeal of Florida, Fourth District.
November 21, 1979.
Rehearing Denied December 12, 1979.
*744 John R. Hargrove of McCune, Hiaasen, Crum, Ferris & Gardner, P.A., Fort Lauderdale, for appellant.
Marshall G. Curran, Jr. of Spear, Deuschle & Curran, P.A., Fort Lauderdale, for appellee.
ANSTEAD, Judge.
This is an appeal by a professional service corporation from a final judgment awarding appellee, a former 25% stockholder in the corporation a 25% interest in the accounts receivable of the corporation as they existed at the time of appellee's retirement from the corporation. The corporation contends that the trial court erroneously failed to recognize a valid and binding stockholders' redemption agreement which precluded the appellee from receiving any portion of the accounts receivable upon retirement.
On February 10, 1969, Doctors Lane, Woolsey, Sheffel, and Gelety formed a professional service corporation, the corporation having been the result of a merger by the Lane-Woolsey and Sheffel-Gelety professional service corporations. Dr. Centrone was an employee, and not a stockholder, at the time of the merger. Each stockholder contributed approximately $63,000.00 as measured by the present value of their accounts receivable. A cross purchase agreement signed at the time of the merger prescribed the method by which the corporation's stock would be purchased and repurchased by the remaining stockholders upon the termination of an existing stockholder's interest by reason of resignation (voluntary or involuntary), death or retirement.
The cross purchase agreement provided for valuation of the stock based on certain property owned by the corporation. The appellee does not dispute that this agreement unambiguously provided that accounts receivable would not be included in the valuation of the stock for purposes of purchase or repurchase upon termination and that the accounts receivable would continue to be owned by the corporation. This valuation method and the reasons therefor were also confirmed in writing by a separate stockholders' memorandum executed by all the parties. A new stock redemption agreement was executed in 1971 to provide for purchase of the stock by the corporation rather than the remaining stockholders.
In addition to the cross purchase agreement the parties entered into an agreement as to employee termination benefits. That agreement provided that in the event of voluntary resignation (or dismissal) by a physician-employee the benefit would be $62,250.00. If termination resulted from retirement, the benefit would be $31,125.00. The dollar amounts were measured by the approximate dollar value of the accounts receivable owned by each physician at the time of the 1969 merger. Thereafter the physician-employees executed annual employment contracts which also provided for these termination benefits.
Shortly after formation of the corporation, Sheffel left and his 25% stockholder interest was repurchased by the corporation in accordance with the cross purchase agreement. In addition, his termination benefits of approximately $63,500.00 were paid by having Sheffel collect the accounts receivable from the Hollywood office of the corporation and offset his termination benefits with payments received, the excess to be turned over to the corporation.
On June 24, 1971, Dr. Centrone became a 25% stockholder and the name of the corporation was appropriately changed. Because he had made no contribution at the time of the 1969 merger, he agreed to take a salary reduction equal in amount to 25% of the existing accounts receivable. The corporation contends that this was done in order *745 for Centrone to achieve equal status and equal entitlement to termination benefits with the remaining stockholders of the corporation who had contributed similar percentages at the time of the corporation's formation. In 1975, Dr. Sheffel returned to the corporation, but only as an employee and not as a stockholder.
Appellee signed his last employment contract in 1976 and upon his retirement in 1977 began receiving termination benefits. When the corporation refused his demand for 25% of the existing accounts receivable, appellee filed a complaint seeking to have the trial court declare the aforementioned stockholders' agreements void and to award him a 25% interest in the accounts receivable. The trial court held that the agreements were ambiguous and void on the grounds that they were not followed with respect to Dr. Sheffel and Dr. Centrone and, if now followed, the agreements would unjustly enrich the remaining stockholders.
On appeal, the corporation contends that the stock valuation formula was not ambiguous and that the trial court erred in voiding the agreements as to appellee. We agree.
In reaching its conclusion, we believe the lower court overlooked a basic premise of contract law enunciated by the Florida Supreme Court in People's Savings Bank & Trust Co. v. Landstreet, 80 Fla. 853, 87 So. 227 (1920):
[W]here the terms of a written agreement are in any respects uncertain or doubtful, and the parties thereto have by their conduct placed a construction upon it which is reasonable, such construction will be adopted by the court to give effect to the intention of the parties. Holmes et al. v. Stearns Lumber & Export Co., 66 Fla. 259, 63 So. 449; Mizell Live Stock Co. v. J.J. McCaskill Co., 59 Fla. 322, 51 So. 547; Scotch Mfg. Co. v. Carr, 53 Fla. 480, 43 So. 427; Shouse, Adm'r. v. Doane, 39 Fla. 95, 21 So. 807. This rule, however, is applicable only in cases where there is doubt as to the meaning of the terms employed to express the agreement. If the meaning is clear and free from ambiguity, the contract will not be changed by an erroneous construction placed upon it by the parties thereto, and an erroneous construction by them will not prevent the court from giving the true construction. The province of the court is to give effect to the contract which the parties have made.
Courts may not interfere with the freedom of contract or substitute their judgment for that of the parties thereto and rewrite a contract in order to relieve one of the parties from the apparent hardship of an improvident bargain. Home Development Co. of St. Petersburg v. Bursani, 178 So.2d 113 (Fla. 1965); Simpson v. Young, 369 So.2d 376 (Fla. 1st DCA 1979).
The appellee admits that neither the stockholders' memorandum nor the stock redemption agreements are ambiguous. Instead, appellee argues that because in actual practice the appellant corporation did not follow the dictates of the agreements with respect to Drs. Sheffel and Centrone, enforcement of the agreement as to appellee would be unfair.
The appellee does not claim, and indeed the record contains no indication of, fraud or deception, nor abuse of confidence. Appellee does not contend that he was coerced into entering into the subject agreements and concedes that he did so of his own free will and accord. Nor does he claim that he received anything less than what was provided for in the agreements by virtue of the actions of the corporation regarding Drs. Sheffel and Centrone.
It is true that Dr. Sheffel apparently received his employee termination benefits by continuing to collect accounts receivable of the corporation until the collections equaled the benefits due. It is also true that by leaving the corporation so soon after its inception his termination benefits very nearly approximated a 25% interest in the existing accounts receivable since that was the formula by which termination benefits were originally determined. However, this in no way adversely affected the appellee and was not so contrary to the terms of the stock purchase agreement as to void its *746 effect. Two entirely different agreements are involved, one for termination benefits and the other for redemption of stock. In addition we note that the appellee executed the 1971 agreement providing for the corporation's purchase of the stock well after the initial departure of Dr. Sheffel, and thereafter appellee continued to execute annual employment contracts providing for termination benefits under the same formula as originally agreed upon. Moreover, appellee makes no claim that he was harmed or affected in any adverse way in 1971 when the corporation required that Dr. Centrone pay it (through a reduction in salary) an amount equal to a proportional share in the accounts receivable as the other stockholders had done in 1969 upon formation of the corporation. In short, there is nothing about the treatment accorded Drs. Sheffel and Centrone which justifies setting aside the stock redemption agreements executed by appellee.
An examination of the particular instruments at issue reveal no language requiring a distribution of the accounts receivable of the corporation upon a termination of appellee's interest therein. In clear and unambiguous terms, the purchase price for the stock is measured by the book value, not to include accounts receivable. The essence of appellee's complaint is that he made what he now perceives to be a "bad deal" because a corporation composed of three remaining stockholders will end up with ownership of all of the corporation's accounts receivable. But that is exactly the position appellee was in when he was a stockholder and that is exactly what the appellee agreed to when he executed the agreements in question. If the parties had intended that, upon termination of appellee's association with the corporation, he would be entitled to receive a 25% interest in the existing accounts receivable, then it would have been a simple matter for the stock redemption agreement to have said so. The parties having failed to do so, the courts cannot now make a "new deal" for them.
Accordingly, the judgment of the trial court is reversed with directions for further proceedings not inconsistent with this opinion.
MOORE, J., and TENDRICH, MOIE J.L., Associate Judge, concur.