**UNITED BONDING INSURANCE COMPANY, Appellant,**

v.

**GENERAL CABLE CORPORATION, Appellee.**

**No. 23966.**

United States Court of Appeals
Fifth Circuit.

July 11, 1967.

Rehearing Denied Aug. 18, 1967.

William T. Moore, D. Lloyd Zook, Moore & Moore, Miami, Fla., for appellant.

William Terrell Hodges, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellee.

Before BROWN and SIMPSON, Circuit Judges, and SUTTLE, District Judge.

JOHN R. BROWN, Circuit Judge.

The question in this case is whether a surety in the name of the equitable right of exoneration can force the obligee-creditor to wait for money admittedly owing by the principal until the asserted, but disputed, liability of a third party to the principal is litigated. The District Court held in the negative and, affirming, so do we.

The Surety [1] for the Subcontractor,[2] under a private (non-Miller act) performance and payment bond conditioned

---

1.  United Bonding Insurance Company.

2.  South Florida Electric Company, Inc.

upon payment by the Subcontractor to " * * * all persons who shall have furnished labor or material directly to the [Subcontractor] for the use in the prosecution of the aforesaid work, each of which said persons shall have a direct right of action on this instrument in his own name and for his own benefit * * *," faced with claims of Creditors [3] of the insolvent Subcontractor who had defaulted, filed this suit against the Prime Contractor [4] and its Miller Act surety.[5] Joined also were the Creditors (see note 3, supra). The suit sought a judgment for the amounts due from the Prime Contractor to the Subcontractor. And, of primary interest here, it sought exoneration through a decree requiring the Prime Contractor to make payment direct to the Creditors out of any sums found due the Subcontractor by the Prime Contractor. The Creditors counterclaimed, F.R.Civ.P. 13(a), against the Surety and cross-claimed, F.R.Civ.P. 13 (g), against the Prime Contractor.[6] In answer to the Creditor's counterclaim, the Surety admitted the existence, amount and validity of the debt, but asserted payment was not then due until its right of exoneration though the Prime Contractor was exhausted. Both to the Surety's initial complaint and to the Creditor's cross-claim, the Prime Contractor denied any liability to either of them.

■ The District Court granted summary judgment for the Creditor

against the Surety. Contrary to the Surety's contention that this summary judgmen frustrated its right of exoneration, the District Court was careful to preserve all rights, if any, which the Surety has against the Prime Contractor or its Miller Act Surety.[7] The Surety recognizes, of course, that its claim is unusual, certainly in the sense that here the demand for exoneration is not from the Principal but rather from one alleged to be indebted to the Principal. CF. ALI Restatement, Security § 112 (1941); and see generally 50 Am.Jur., Suretyship §§ 219–225 (1944). Since the right is a creature of equity, it is not surprising that under some circumstances to do equity, equity can take the direct course. See, e.g., Morley Constr. Co. v. Maryland Cas. Co., 8 Cir., 1937, 90 F.2d 976. That is virtually what was done in the case the Surety claims now to be the law of the Medes and Persians which altereth not. But there are many distinctions between our situation and that in our earlier case of Glades County, Fla., v. Detroit Fidelity & Surety Co., 5 Cir., 1932, 57 F. 2d 449. Several of these we emphasized in Continental Cas. Co. v. Caldwell, 5 Cir., 1941, 120 F.2d 742.[8] See also Johnson v. Thomas, N.D.Tex., 1936, 16 F.Supp. 1013, 1018.

In *Glades County*, while granting a judgment which so far as appears was immediately self-executing in favor of the creditors against the surety, the Court allowed a direct judgment in favor of the surety against a debtor of princi-

---

3. These creditors included General Cable Corporation and Westinghouse Electric Supply Company.

4. Pan American Engineering and Construction Company.

5. The Aetna Casualty and Surety Company.

6. Throughout this we disregard the Prime Contractor's surety as such.

7. Nothing has been done. It is another case of mistaken assumption that an appeal suspends everything. Cf. Wooten v. Ohler, 5 Cir., 1962, 303 F.2d 759. Neither the District Judge nor the Creditors can be charged with this irreversible loss of time.

8. "When finally appellant, invoking such cases as * * * Glades County, Florida v. Detroit Fidelity & Surety Co., 5 Cir., 57 F.2d 449, grounds its right to maintain the suit on the general equities of the petition, his case is even more hopeless. For, none of those cases were in any respect like this one. In all of them there were strong special equities; that the contractor was insolvent; that there had been diversion of funds; and that there were admitted retained percentages which under the terms of the contract had been withheld for the payment of claimants. * * *." 120 F.2d at 745.

pal as a means of effectuating exoneration. The debt was admittedly due by the county to the principal. The principal was not only insolvent, it was a bankrupt and the bankruptcy Trustee was attempting to get full control over the funds representing the debt for the benefit of general creditors. The surety, on the other hand, sought the same funds for its claimed prior right of exoneration. The creditors however sought payment now from the surety. The Court allowed effective exoneration *vis-à-vis* the trustee's hostile claim, but without subjecting the creditors to any prejudice either in terms of time or money, or both.

Here the Surety's position is bereft of even the most remote, slight suggestion of a whisper of possible equity. There is no "gentle wand" of equity either to unlock relief or spring it out of a hat. United States v. Maryland Cas. Co., 5 Cir., 1956, 235 F.2d 50, 53, 1956 AMC 1822/1826; Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co., 5 Cir., 1962, 303 F.2d 692, 698, 1962 AMC 1710, cert. denied, 371 U.S. 942, 83 S.Ct. 321, 9 L.Ed.2d 276; Southern Ry. Co. v. United States, 5 Cir., 1962, 306 F.2d 119, 127; Fidelity & Cas. Co. v. C/B Mr. Kim, 5 Cir., 1965, 345 F.2d 45, 52, 1965 AMC 1944.

■ The Creditors with a debt admittedly in default and admittedly guaranteed by the Surety must stand around while the contested liability, of the Prime Contractor, both substantive and in dollar amount, is litigated. In the meantime if the Surety's position is maintained, the Creditors have only the unsecured promise of the Surety that it will pay if —and the if is or may be a big one—the recovery for the Creditors against the Prime Contractor is totally or partially inadequate. On the Surety's theory the "compensation" for this suspension of its admitted obligations to the Creditor is the Creditor's right to collect legal interest. But a surety contract is the busi-

nessman's recognition that the protection is to enable people to continue in business. The bond is not to afford to the creditor security for satisfaction of a judgment wrought out by prolonged litigation. It is to assure prompt payment to a creditor of sums admittedly due and as to which the principal has no defenses.

■ The Chancellor's pronouncement from the woolsack was equitable and justifiable. The Creditor is entitled to immediate payment.[9] Payment by the Surety of the judgment in favor of the Creditors will in no way harm or prejudice the Surety's claim against the Prime Contractor which, for some undisclosed and uncipherable reasons, it has let lapse into limbo (See note 7 supra).

Affirmed.

9. On the remand the District Court should determine and award to the Creditors the attorney's fees and costs incident to this appeal. Cf. D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 352–353, 1966 AMC 2223.