438 So.2d 274 (1983)
Dorothy James ARAMBURO, et al.
v.
The TRAVELERS INSURANCE COMPANY, et al.
No. 12921.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
Writ Denied December 9, 1984.
*275 J. Paul Demarest, Favret, Favret, Demarest & Russo, New Orleans, for plaintiffs-appellants.
Richard Creed, Jr., Owen, Richardson, Taylor, Mathews & Atkinson, Baton Rouge, for defendants-appellees.
Before REDMANN, C.J., and LOBRANO and WARD, JJ.

ON MOTION TO ALTER PHRASEOLOGY
REDMANN, Chief Judge.
Plaintiff moves that we clarify our now-definitive judgment in this matter, reported at La.App., 426 So.2d 260. We deem her motion one to amend the phraseology but not the substance of our judgment (see C.C.P.1951 and its Comment (d); see also State, Dept. Hwys. v. Anselmo, 309 So.2d 769 (La.App. 4 Cir.1974)).
The occasion for plaintiff's motion is a disagreement over the meaning of our judgment as amended on application for rehearing: does it change a judgment for $50,000 plus interest and costs to $49,900 plus interest and costs, or $49,900 without interest and costs?
The trial court judgment, based on a jury finding that a lower uninsured motorist limit had been selected, awarded that lower limit of $5,000 "with legal interest from judicial demand and all costs."
Plaintiff's appeal argued that no effective selection of a lower limit had been made, and that therefore La.R.S. 22:1406 D(1)(a) imposes UM coverage in the amount of the policy's $50,000 bodily injury limit. The original brief of defendant Louisiana Insurance Guaranty Association (for Reserve Insurance Company, insolvent) argued only the contrary view. Defendant did not in that brief contend that, if the limit were held to be $50,000, there was any statutory problem with this court's awarding the full policy limit of $50,000 as well as interest and costs. We agreed with plaintiff's position, noting "The jury fixed quantum in excess of the $50,000 UM coverage thus imposed by statute ...." Our opinion never mentioned any statutory limit relative to defendant LIGA. Our decree read "The judgment is amended in quantum to $50,000, at appellee's cost." It is not arguable that "quantum" in our decree included interest and costs, not only because that is not the word's ordinary usage, as an abbreviation of quantum damnificatus, but also because the decree expressly added costs.
LIGA's application for rehearing included two paragraphs of argument against our conclusion that a lower limit had not been selected, and then concluded:
"In addition, the judgment of the Court of Appeal casts the LIGA for $50,000.00, when its maximum exposure pursuant to statute is $49,900.00. See R.S. 22:1382(1)(a) which provides $100.00 deductible on all claims against the Guaranty Association and a ceiling of $50,000.00."
That first mention of the $49,900 statutory limit of LIGA's liability did not expressly suggest that the limit was so absolute as to prevent the addition of interest and costs. To the contrary, by its silence in the face of an amendment of "quantum" to the $50,000 policy limits "at appellee's cost," when the judgment being amended had also provided interest from judicial demand, appellee's application for rehearing impliedly suggested there was no problem as to interest and costs, but only a problem with "cast[ing] the LIGA for $50,000.00, when its maximum *276 exposure pursuant to statute is $49,900.00." In acting on that application by LIGA, we wrote "we agree with its argument that La.R.S. 22:1382(1)(a) limits its liability to $49,900, and our decree is amended to that amount."
After the supreme court refused writs, defendant tendered $49,900 without interest and costs, prompting the motion for clarification or amendment now before us.
LIGA's argument is twofold: that R.S. 22:1382(1)(a) does not permit a judgment in excess of $49,900, and thus prohibits a judgment for $49,900 plus interest and costs; and that the wording of our decree ("our decree is amended to that amount," i.e., $49,900) limits the judgment to a total of $49,900, including interest and costs. We disagree.
The statutory limit only applies to the original amount of the claim, and does not prevent an award of interest and costs in addition to the $49,900 limit. We read R.S. 22:1382(1)(a) and (b) together:
"(1) The association shall:
"(a) Be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency [or under other specified time limits] ..., but such obligation shall include only that amount of each covered claim ... which is in excess of one hundred dollars and is less than fifty thousand dollars ....
"(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent." (Bracketed matter supplied.)
First, legal interest on a covered claim would continue to run and is therefore not "existing prior to the ... insolvency" or other time limit by which "covered claims" are limited in § 1382(1)(a). For that reason we would reject a claimant's argument that interest and costs, in a suit for a $100 loss, raise the claim to over $100, and that LIGA is therefore liable for the excess (i.e., the interest and costs in the $100 suit). We therefore conclude that legal interest and costs are not part of a "covered claim" in the case of an ordinary personal injury claim.
Second, R.S. 22:1382(1)(b)'s deeming LIGA "the insurer to the extent of its obligation on the covered claim"here, $49,900 with "all the ... duties and obligation of the insolvent insurer as if the insurer had not become insolvent" places upon LIGA the obligation that the insurer sued on such a claim would have, including the payment of legal interest and costs in addition to the claim, even when the claim is for the statutory maximum of $49,900.
Third, these statutes must be "liberally construed to effect the purpose under [§ 1376], which shall constitute an aid and guide to interpretation."
§ 1376 declares as two purposes "to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." Liberal construction to achieve those purposes requires (1) that LIGA not be rewarded for excessive delay in payment, as it would be if it could invest the $49,900 limit in a large claim yet not have to pay interest, and (2) that the claimant not be forced to suffer the added financial losses of interest and costs in a disputed claim (here said to amount to about $20,000).
Legal interest and costs are therefore not part of the "covered claim" limited by § 1382(1)(a) to $49,900, but are part of LIGA's obligations under § 1382(1)(b); and a contrary conclusion would defeat rather than serve the express statutory purposes of § 1376 to accomplish which § 1378 commands a liberal construction.
Nor does the wording of our amendment to our decree exclude interest and costs atop the $49,900 principal award. The trial court's judgment was for $5,000 plus interest and all costs. We amended it in "quantum" to $50,000 "at appellee's cost" in an opinion context that can leave no doubt that we substituted $50,000 for $5,000 (not for "$5,000 with legal interest"), making the judgment for $50,000 plus interest and all costs (including costs of the appeal). *277 And finally, in the context of the application for rehearing that LIGA then filed, and in the context of the statutes discussed at length above, our action on application for rehearing must be read as "we agree that La.R.S. 22:1382(1)(a) limits [LIGA's] liability [on the principal amount, the `covered claim'] to $49,900, and our decree is amended [in principal] to that amount."
Our decree is therefore changed, to "alter the phraseology of the judgment, but not the substance," C.C.P.1951, to read as follows:
The judgment appealed from is amended in principal to $49,900, and is affirmed insofar as it awarded legal interest from judicial demand and all costs; appellee is to bear the costs of this appeal.