UNITED STATES for the Use and Benefit of BERNARD LUMBER COMPANY, INC., Plaintiff–Appellant,

v.

LANIER–GERVAIS CORPORATION, Defendant,

The Louisiana Insurance Guaranty Association, Defendant–Appellee.

No. 89–3332.

United States Court of Appeals, Fifth Circuit.

March 16, 1990.

---

Diana L. Rachal, Friend, Wilson & Draper, New Orleans, La., for plaintiff-appellant.

Tracy Bishop, Jay H. Kern, Simon, Peragine, Smith & Redfearn, New Orleans, La., for defendant-appellee.

Before BROWN, WILLIAMS and JONES, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Reversing the District Court's denial of relief in this suit by Bernard Lumber Co. (Bernard), a supplier to Lanier–Gervais Corporation (Lanier) the contractor against its Miller Act Surety Integrity Insurance Company (Integrity) through its statutory guarantor Louisiana Insurance Guaranty Association (LIGA) turns on the following events:

| Event No.[1] | Date | Description |
|---|---|---|
| 1. | October 24, 1986 | Last delivery to contractor Lanier by Bernard |
| 2. | March 24, 1987 | Integrity declared insolvent by Superior Court of New Jersey, appointed liquidator and injunction against suits |
| 3. | March 25, 1987 | Amended court order discontinuing defenses by Integrity |
| 4. | July 10, 1987 | Bernard files claims with liquidator |
| 5. | October 24, 1987 | One-year limitation period, Miller Act expires |
| 6. | November 6, 1987 | Liquidator's notice of allowance of Bernard's claim $13,574.85 |
| 7. | January 6–7, 1988 | Sixty-day objection period expires with no objection to allowance of Bernard's claim |
| 8. | April 13, 1988 | Miller Act suit filed against LIGA |
| 9. | February 1, 1988 | LIGA's motion for summary judgment |
| 10. | February 17, 1988 | Bernard's counter motion for summary judgment |
| 11. | April 26, 1988 | Summary judgment granted to LIGA |
| 12. | May 1, 1988 | Final judgment for LIGA. |

### Limitation Sets In

■ Obviously, as LIGA continuously emphasizes, the failure of Bernard to commence suit against Integrity by October 24, 1987 (Ev. 5) within one year of Ev. 1 raised the Miller Act one year statute of limitation, 40 U.S.C. § 270b(b), which is controlled by Federal law. *United States for the Use and Benefit of (f.u.b.) Harvey Gulf International Marine, Inc. v. Maryland Casualty Co.*, 573 F.2d 245, 247 (5th Cir.1978).

■ No longer in any dispute in the Fifth Circuit is the fact that this mis-named "jurisdictional" defense is subject to equitable tolling. *United States f.u.b. Texas Bitulithic Co. v. Fidelity and Deposit Company of Maryland*, 813 F.2d 697, 699 (5th Cir.1987).[2]

Accepting this principle, as we must, the question still remains whether the inherently equitable factors of equitable estoppel are equitably presented by the circumstances of this case. (*See, e.g.* Ev. 2, 3, 4, 6).

### Insolvency Sets In

The most significant events are those on March 24–25 (Ev. 2, 3) when the Superior Court of New Jersey, the domiciliary state of Integrity, declared it insolvent (R. 053). The Decree also ordered the appointment of the Liquidator, ((3) 055), ordered claims to be filed in the liquidation proceeding, enjoined the filing and prosecution of suits against Integrity ((8)(14) 058–9, (232, 068)), and ordered Integrity to cease the defense of all claims against it. (2. R. 074).

While currently enjoined from instituting any suits against Integrity, Bernard filed its claim with the Liquidator July 10, 1987 (Ev. 4) on the official form prescribed by the Liquidator (R. 0268, 0190). On November 6, 1988, now 13 days beyond the Miller Act limitation date (Ev. 5), the Liquidator gave notice of the allowance of the claim in the amount of $13,574.85 (R. 0283, 0191). The notice of allowance stating that it was issued in accordance with the Order of March 24, 1987 (Ev. 2) and the Order of July 2, 1987 prescribing procedures for allowance of proof of claims, was as follows:

---

1. Hereafter cited as Ev. 1, 2, etc.

2. Citing other Courts of Appeals' like decisions: *United States ex rel. Nelson v. Reliance Insurance Co.*, 436 F.2d 1366, 1370 (10th Cir.1971); *United States ex rel. Humble Oil & Refining Co.*

*v. Fidelity and Casualty Co.*, 402 F.2d 893, 897–900 (4th Cir.1968); *United States ex rel. E.E. Black, Ltd. v. Price–McNemar Constr. Co.*, 320 F.2d 663, 665–66 (9th Cir.1963).

KENNETH D. MERIN, Commissioner
of Insurance of the State of
New Jersey: Plaintiff.

vs.

INTEGRITY INSURANCE COMPANY,
a Stock Insurance Company of
New Jersey, et al.: Defendants.

To: BERNARD LUMBER COMPANY
C/O ARNOLD J. SCHIELDS, JR.
P.O. BOX 13726
NEW ORLEANS, LA. 70185

Re: Insured: LANIER–GERVAIS CORP.
Claimant BERNARD LUMBER CO.
Policy # ICB020046
IIC Claim 000–00–116040
Date of Loss
Guaranty Assn. SEE BELOW

PLEASE TAKE NOTICE that the Deputy Liquidator of Integrity Insurance Company in Liquidation, acting pursuant to N.J.S.A. 17:30C–1 et seq., the Order of Liquidation entered in the above matter on March 24, 1987, and the Order Establishing Procedure For Allowance Or Disallowance of Proofs of Claim entered July 8, 1987, hereby advises of his recommendation to the Superior Court of New Jersey regarding the allowance or disallowance of the following Proof of Claim: Liquidator Claim # 7969 Amount Claimed $13,574.85. CLAIM IS ALLOWED, SUBJECT TO TERMS AND CONDITIONS OF BOND AND TO THE FOLLOWING: (a) Bond coverage, payee and amount of claim to be determined by Guaranty Association, if amount exceeds Guaranty Association limit, excess to be determined by Deputy Liquidator.[3]

LOUISIANA INSURANCE GUARANTY ASS'N.
4150 SOUTH SHERWOOD FOREST
(P.O. BOX 15989)
BATON ROUGE, LA. 70895–5989
MR. GIL GRUEBELLE, CHAIRMAN
(504) 293–5900
DATED: 11/06/87

Michael Miron
Deputy Liquidator
Integrity Insurance Co.
in Liquidation
P.O. Box 1158
Paramus, New Jersey 07652

---

The Order explicitly prescribed a 60–day period in which to object and that on failure to timely object "the allowance . . . shall constitute the final determination and judgment of the Superior Court of New Jersey with regard to the above Proof of Claim and you [the claimant] shall be barred thereafter from objecting to the allowance . . . of such Proof of Claim."

*Insolvency Brings in Louisiana Insurance Guaranty Association (LIGA)*

LIGA is now a frequent litigant[4] in the Fifth Circuit. (La.Rev.Stat. 22:1375 *et seq.*). Indeed, for its origin, statutory pur-

pose, organization, liabilities and responsibilities, it would be an affectation to add to our very recent monumental opinion in *Sifers v. General Marine Catering Co. v. First State Ins. Co. and [LIGA]*, 892 F.2d 386 (5th Cir.1990), covering 11 separate cases from the Eastern and Western Districts of Louisiana. As we there stated:

As a condition of doing business in Louisiana, insurance carriers receiving the statutory benefit of being reinsured were forced to finance LIGA through assessments. In the event that a member-carrier became insolvent, it was envisioned that LIGA would assume all the benefits and obligations of the direct in-

---

**3.** The underscored portion was typed into the printed form and will be referred to later on.

**4.** *See, Crist v. Sharp Electric, Inc.*, 876 F.2d 379 (5th Cir.1989); *In the matter of the Claim for Compensation under the Longshore and Harbor Workers' Compensation Act, Neil Abbott, Jr. v.*

*Louisiana Insurance Guaranty Ass'n.*, 889 F.2d 626 (5th Cir.1989). *Deshotels v. SHRM Catering Servs., Inc.*, 842 F.2d 116 (5th Cir.1988) and 845 F.2d 582 (5th Cir.1988) certifying question to the Supreme Court of Louisiana, resolved at 538 So.2d 988 (La.1989).

surance policies underwritten by the defunct carrier.

*Id.* at 388. This 1970 statute "mimicked a uniform state model." *Id.* at 388.

Several provisions of LIGA do bear some emphasis. First, there is the statutory declaration that it shall be liberally construed to effect the purpose of La.R.S. § 22:1376 [5] which provides:

> The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. . . .

Section 22:1382(1) provides that the association shall:

> (a) Be obligated to the extent of the covered claims existing prior to the determination of the insurers' insolvency, . . . but such obligation shall include only that amount of each covered claim, . . . which is in excess of [$100] and is less than [$150,000]. . . . In no event shall the association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises.

Amended Acts 1985, No. 780, § 1; Acts 1987, No. 172, § 1.

Of great significance is subparagraph (b) which provides that LIGA shall:

> (b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.

As does the insolvent insurer, its statutory successor, LIGA has affirmative obligations to investigate claims, adjust them, settle and pay covered claims to the extent of the association's obligation.[6]

■ With respect to LIGA's "to the extent of the covered claims" (*see* § 22:1382(1)(a)) the term "covered claim" is broadly defined as an unpaid claim which arises out of and is within the coverage of the policy issued by the insolvent insurer.[7]

Of course, Integrity fully meets the definition of an insolvent insurer.[8]

It is uncontradicted in this record that a Miller Act payment bond bearing No. ICB 020046, naming Lanier–Gervais as principal and the United States Navy as obligee was issued in connection with Contract No. N62467–84–C–0310 for the Squadron Operations Building, U.S. Naval Air Station (see Exhibit Cr. 00430) and there is no dispute that Integrity, the surety, was adjudged

---

**5.** La.R.S. § 22:1378: "This Part shall be liberally construed to effect the purpose under Section R.S. 22:1376, which shall constitute an aid and guide to interpretation."

**6.** *See* La.R.S. § 22:1382(1)(d):
> Investigate claims brought against the association and adjust, compromise, settle and pay covered claims to the extent of the association's obligation and deny all other claims, and may review settlements, releases and judgments to which the insolvent insurer or its insureds were parties to determine the extent to which such settlements, releases and judgments may be properly contested.

The association is required by § 22:1383(3) to provide a plan of operation which shall:
> (d) Establish procedures by which claims may be filed with the association and establish acceptable forms proof of covered claims. Notice of claims to the receiver or liquidator of the insolvent insurer shall be deemed notice to the association . . . and a list of such claims shall be periodically submitted to the association. . . .

**7.** La.R.S. § 22:1379 provides, as used in this part:

> (3) "Covered claim" means an unpaid claim . . . which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this Part applies issued by an insurer, if such insurer becomes an insolvent insurer after September 1, 1970, and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state. . . .

Amended by Acts 1987, No. 172, § 1, eff. June 19, 1987.

**8.** *See* § 22:1379(4). "Insolvent insurer" means:
> (a) an insurer authorized to transact insurance in this state either at the time the policy was issued or when the insured event occurred and (b) against whom an order of liquidation with a finding of insolvency has been entered by a final judgment of a court of competent jurisdiction in the insurer's state of domicile or of this state, and which order of liquidation has not been stayed or been the subject of a perfected suspensive appeal or other comparable order.

Amended by Acts 1980, No. 486, § 1.

insolvent by the Superior Court of New Jersey, where Integrity has its statutory domicile, on March 24, 25, 1987. (Ev. 2, 3).

■ As the bonds covered both property located in Louisiana as well as the claimant, a concern domiciled in Louisiana, LIGA, who was officially aware of Integrity's insolvency and the liquidation proceeding in the New Jersey Courts,[9] automatically became liable for whatever liabilities Integrity would have had had it not become insolvent.

Bernard's original Federal complaint, para. 14, states that LIGA was given notice by certified mail (Return Receipt Requested) on September 15, 1987, (Receipt dated September 21, 1987) of its claim (R. 00266). Of great significance, this was within the statute of limitations period, yet the record reflects LIGA did nothing.

This brought on at least the duty under La.R.S. § 22:1382(1)(d) seriously and in good faith to "[i]nvestigate claims brought against the association and adjust, compromise, settle and pay covered claims to the extent of the association's obligation...." But the record is silent as to what, if anything, LIGA did. To the contrary, the record reflects, as the fact-finder might well conclude, that LIGA persisted in an outright denial of the whole claim with little or no investigation during the time the claim was fully alive for Miller Act purposes as to many significant factors. These would include whether there was any basis for prospective liability under Integrity's bond, whether there were any defenses to the claim, the amount or value of the claim or the like, the failure of which might trigger liability for attorney's fees under La.R.S. § 22:658 [10] and possible sanctions, (*see Thomas v. Capital Security Services, Inc.*, 836 F.2d 866 (5th Cir.1988)), against the party, counsel, or both, for violation of F.R.Civ.P. Rule 11 which imposes severe duties on Counsel who sign a Federal pleading: [11]

9. Under La.R.S. § 22:1384, the Commissioner of insurance is required to (1)(a) "[n]otify [LIGA] of the existence of an insolvent insurer not later than three days after he receives notice of the determination of the insolvency." The Commissioner may also require that LIGA "notify the insureds of the insolvent insurer and any other interested parties" of the insolvency and of their rights under this Part. La.R.S. § 22:1384(2)(a). Indeed LIGA's General Counsel's affidavit (R. 0031) reflects that the Insurance Commissioner had informed LIGA of Integrity's insolvency on April 13, 1987, LIGA then followed up by published notices, in three newspapers including one in New Orleans.

10. La.R.S. § 22:658 provides:
(B)(1) Failure to make such payment [due an insured] within sixty days ..., when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, ... together with all reasonable attorney fees for the prosecution and collection of such loss....
This court in *Sifers, supra*, allowing attorney's fees as part of the obligation of the insolvent insurer stated:
In effect, the statutory coverage becomes the policy coverage upon the insolvency of the insurer. At that time, the association is "deemed the insurer" and takes on all the rights and obligations of the insurer, including the obligation to deal with insureds in good faith. Therefore, the provisions of [§ 22:658 do] apply to coverage questions.
*See* pp. 398–99.

11. Several things may, to the trial court on remand, illustrate LIGA's ostensible indiffer-

ence. First, in the plaintiff's suit erroneously and mistakenly filed in the state court on October 1, 1987—still within the one-year limitation period—the petition (R. 00181–82) alleged that plaintiff had given notice by certified mail to parties including LIGA and attached photocopies of the letter of September 15, 1988, together with the receipt signed by LIGA. Notwithstanding this photocopy document, LIGA's answer to para. 5 denied the allegations for lack of sufficient evidence to form a belief (R. 0202) just as it had with respect to paras. 2, 3 and 4 which set forth the plaintiff's claim that materials were furnished for this U.S. Navy Squadron Operation Building, for which, on the insolvency of Integrity, LIGA became liable on Integrity's bond. In the memoranda filed with the state court in support the exception for lack of subject matter jurisdiction (R. 00181) LIGA described the claim made by plaintiff asserting the contract between Lanier–Gervais, Contractor, and the U.S. Navy for improvements to the Squadron Operations Building, Naval Air Station, for which Integrity issued and executed Miller Act surety bonds and stated for the record (R. 00182) that subsequent to execution of the bonds, Integrity became an insolvent insurer so that LIGA became obligated for claims arising from the bonds to the extent the claims were "covered claims" defined in La.R.S. §§ 22:1379(3) and 22:1382(1)(a). The state court dismissed plaintiff's claim against LIGA on November 7, 1988 (R. 00262).

Of course Rule 11 has nothing to do with state court pleadings but on April 13, 1988, plaintiff filed its Original Complaint in the United States District Court (R. 263) to which, now 15 months

Every pleading, motion, and other paper of a party ... shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by the signer ... that to the best of the signer's knowledge, information, and belief *formed after reasonable inquiry it is well grounded in fact* ... and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction ... including a reasonable attorney's fee.

### Equitable Estoppel Overcomes Limitations, Insolvency and LIGA's Defense

With equitable estoppel firmly established both in this circuit and elsewhere, LIGA's principal objection comes down to this: Equitable estoppel, although recognized, is confined to the sort of misleading, deceitful statements or conduct illustrated in cases urged by LIGA: *United States for the Use and Benefit of Texas Bitulithic Co. v. Fidelity and Deposit of Maryland*, 813 F.2d 697 (5th Cir.1987); *United States for the Use and Benefit of Atlas Erection Co., Inc. v. Continental Casualty Co.*, 357 F.Supp. 795 (E.D.La.1973); *United States for the Use and Benefit of E.E. Black, Ltd. v. Price–McNemar Construction Co.*, 320 F.2d 663 (9th Cir.1963); *United States v. Ellis Construction Co.*, 78 F.R.D. 317 (E.D.Tenn.1978); *United States for the Use and Benefit of Bagnal Building Supply Co. v. United States Fidelity and Guaranty Co.*, 411 F.Supp. 1333 (D.S.C. 1976); and *United States for the Use of Howard L. Nelson v. Reliance Insurance Co.*, 436 F.2d 1366 (10th Cir.1971).

■ We firmly disagree. Any such approach would ignore the very title of the doctrine: *Equitable* estoppel. That term comprehends that whenever the Chancellor would be led to conclude that in good conscience the result is unjust, unfair or unacceptable, the "magic wand of equity" has the power and duty to ignore, disregard or overrule the obstacle. *United States v. Maryland Casualty Co.*, 235 F.2d 50, 53 (5th Cir.1956); *see also, Southern Railway Co. v. United States*, 306 F.2d 119, 127 (5th Cir.1962); *Fidelity & Casualty Co. of New York v. C/B MR. KIM*, 345 F.2d 45, 52 (5th Cir.1965); *United Bonding Ins. Co. v. General Cable Corp.*, 381 F.2d 753, 755 (5th Cir.1967); *Travelers Indemnity Co. v. Peacock Constr. Co.*, 423 F.2d 1153, 1159 (5th Cir.1970); *Florida Bahamas Lines,*

---

after it had been notified of Integrity's insolvency, amazingly enough, LIGA responded by motion for additional time which was granted to answer, to enable them to ascertain the facts, objections and defenses of LIGA (R. 0260 and R. 257), the complaint. (R. 263). Although again para. 14 (R. 00266) specifically alleged the mailing of the certified letter to LIGA and attached as Ex. E, a copy thereof, (R. 288) with return receipt executed by LIGA, LIGA again, as it had done in the state court proceedings, denied paras. 6 through 14 for lack of sufficient information on which to form a belief. Except for limited exception it did likewise, as to paras. 3, 4 and 5.

Of course, the matter of sanctions has not yet come up, but since on the trial on remand it might well arise, we point out that this court has not yet ruled on whether LIGA would be responsible for sanctions under F.R.Civ.P. Rule 11. *But see, Sifers, supra,* at Part IV, p. 396 and p. 396 n. 44, allowing interest on amounts in excess of the statutory cap of $149,900 and Part V, p. 398 in which the court analyzed and then determined "we adopt both the reasoning and the holding of *Aramburo*," 438 So.2d 274 (La. App. 4th Cir.) *writ denied,* 443 So.2d 1110 (La. 1983); *Sifers* at 398.

In *Sifers,* at 397 we quoted with approval *Aramburo:*

RS 22:1382(1)(b)'s deeming LIGA "the insurer to the extent of its obligation on the covered claim ... with all the ... duties and obligations of the insolvent insurer as if the insurer had not become insolvent" *places upon LIGA the obligation that the insurer sued on such a claim would have, including the payment of legal interest and costs in addition to the claim, even when the claim is for the statutory maximum* ....

(Emphasis by the *Sifers* Court.)

And regardless of LIGA's liability for sanctions under the Louisiana guaranty statute or as the statutory successor to Integrity, it is, of course, a litigant subject to all of the Rules of Civil Procedure, as are its counsel.

*Ltd. v. The Steel Barge "Star 800" of Nassau*, 433 F.2d 1243, 1250 (5th Cir.1970).

■ We hold, as a matter of law, that when, as here, a party is forbidden by an injunction of a competent court to initiate litigation, that is the very essence of circumstances calling for equitable relief. Nothing could be more *in* equitable, less equitable than to forfeit the legal rights of a party who is enjoined from bringing the legal action.

■ There is no doubt that the Superior Court of New Jersey, since it was the state of domicile of Integrity, was a court of competent jurisdiction and had the power to initiate the liquidation proceedings, and enter its orders, including the sweeping injunction.[12] We reject, as unfounded, both the holding, expressions and implications of *United States f.u.b. Pittman Mechanical Contractors, Inc. v. Irvine and Associates, Inc.*, 645 F.Supp. 845 (E.D.Va.1986).[13]

LIGA gets no help from that part of the order of liquidation (R. 53) "that Guaranty Associations of the other states are obligated to the extent set forth in the applicable laws of their respective states." [14] The liabilities urged by plaintiff are not, as this objection implies, asserted out of the blue. Rather, it depends immediately and precisely on the terms of the Louisiana Insurance Guaranty Association law. At the risk of oversimplification, the statute simply says: LIGA is, or is deemed to be, Integrity. It has whatever liabilities Integrity would have under the bond. It has whatever defenses Integrity would have. Our holding is that whatever liability Integrity would have were it not for insolvency is now imposed on LIGA. As a matter of judicial fact, Integrity has already been found liable by the allowance of the claim filed by plaintiff and allowed by the liquidator. (Ev. 6).

Since La.R.S. § 22:1382(1)(b) declares that LIGA shall be "deemed the insurer to the extent of its obligation on the covered claims," suit brought in the name of LIGA was in legal effect a suit by the plaintiff against Integrity who clearly had a right to assert equitable estoppel.[15] As to the claim against Integrity (and hence against LIGA) the plaintiff is excused from filing the suit against Integrity (LIGA) within the statutory one-year period. The suit stands as timely filed against Integrity.

### What is Open on Remand

■ Since remand is necessary we point out those factors not open for further contest below:

**12.** In its supplemental memoranda in opposition to LIGA's motion for summary judgment, the plaintiff casually referring to the mistaken suit in the state court, did state "LIGA ignores the fact that the injunction had been terminated at that time, pending the determination of the claim by the Liquidator for Integrity." (R. 4) But we have searched this whole record with its voluminous papers, motions, affidavits and there is not a single indication that the New Jersey Court ever terminated the injunction or the dates of such termination. We, as a court and as all other parties are bound to give full faith and credit to the orders of the liquidating court.

**13.** We accept, of course, the court's statement that for a Miller Act bond case, the Federal District Court was the exclusive forum. On the basis of full faith and credit assured by the Constitution, among other things, we reject the court's notion that since Indiana, the site of the rehabilitation court, could not have jurisdiction over a Virginia claimant, the injunction was deemed to be meaningless. What happened in the instant case demonstrates the incorrectness of that court's approach. Here New Jersey, the site of Integrity and the liquidation proceeding does not have jurisdiction over the plaintiff or LIGA. Nevertheless, the plaintiff was entitled to, and did, file its claim which was considered, received and allowed.

**14.** *See* para. 14(d):

Notwithstanding the provisions of this or any other paragraph herein, the New Jersey Property–Liability Insurance Guaranty Association shall remain obligated after entry of the within order of all covered claims against Integrity in accordance with, and to the extent set forth in NJSA 17:308a(1). *All other guaranty associations shall remain obligated after entry of the within order in accordance with the provisions of, and to the extent set forth in the applicable laws of their respective states.*
(Emphasis added.) (R. 61).

**15.** Our analysis automatically rejects LIGA's contention that, quite apart from Integrity's situation, there was no injunction as to suits against LIGA to excuse the failure to file within the limitation period.

(1) Equitable estoppel is established and excuses plaintiff's failure to file within the limitation period.

(2) Integrity is insolvent and the liquidating court had jurisdiction to receive, consider and allow plaintiff's claim in the amount of $13,574.85.

(3) The allowance of the claim (para. 2) establishes that the claim is within the conditions of Integrity's bond and that it is a "covered claim" for which LIGA may be liable.

(4) The Integrity bond, as such, covers materials, if any, delivered or furnished to the bonded job.

This leaves open only that part of the para. (2) "subject to" in the allowance of claim (*See*, R. 0283, 0191) and the "amount of claim." If the facts support the delivery of the materials to the bonded job by plaintiff, there is no doubt that there is "bond coverage." Likewise, plaintiff is the only party making claim so there is no controversy as to "payee" to be determined by the fact-finder. Only open as a fact is the "amount" which will, of course, include whether, and to what extent, materials were furnished or delivered by plaintiff to the bonded job, the value thereof, and the balance in dollars due, if any, all of which on the present record is in dispute.

This highly restricted trial will enable both plaintiff and LIGA to achieve one of the principal Louisiana purposes "to avoid excessive delay in payment and to avoid financial loss to claimants ... because of the insolvency of an insurer." La.R.S. § 22:1376. To the extent pleadings of either party need or require, amendment shall, as F.R.Civ.P. 15 calls for, be freely given.

The consequence is that the case must be reversed and remanded for further consistent action.

REVERSED AND REMANDED.