UNITED STATES of America, for the use and benefit of ACCA CONSTRUCTION SERVICES, LLC, Plaintiff,

v.

F.A.S. DEVELOPMENT COMPANY, INC., and Commercial Casualty Insurance Company of Georgia, Defendants.

No. CIV.A.1:02–CV1507RWS.

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 22, 2004.

Hillman James Toombs, Hillman J. Tooms & Associates, Riverdale, GA, Counsel for Movant.

Maurice Michael Egan, Jr., Larry David McCollum, Owen, Gleaton, Egan, Jones & Sweeney, Atlanta, GA, Counsel for Plaintiff.

Randal Alonzo Mangham, Office of Randal Alonzo Mangham, Decatur, GA, Counsel for Defendant F.A.S. Development Co.

Alfred A. Malena, Jr., John D. Alexander, Thompson & Slagle, Duluth, GA, Counsel for Defendant Commercial Casualty Insurance Company of Georgia.

## ORDER

STORY, District Judge.

Plaintiff filed the present action on June 30, 2002 seeking to recover on a payment bond issued by its Miller Act surety Commercial Casualty Insurance Company of Georgia ("Commercial Casualty") for principal F.A.S. Development Company, Inc. ("F.A.S."). The action is brought pursuant to the Miller Act which vests exclusive jurisdiction in the United States district courts. See 40 U.S.C. § 3133. Now before the Court for consideration are Commercial Casualty's Motion for a Stay of Proceedings [50–1] and Plaintiff's Request for Oral Hearing on Commercial Casualty's Motion to Stay [55–1]. Having considered the record and having conducted a hearing via telephone on January 14, 2004, the Court enters the following Order.

On November 17, 2003, the North Carolina Insurance Commissioner (the "Commissioner") took control of Commercial Casualty pursuant to a statutory rehabilitation process under the laws of the state of North Carolina. The North Carolina statute governing rehabilitation and liquidation of insurance companies prohibits the further prosecution of actions against Commercial Casualty. See N.C. Gen.Stat. § 58–30–20. On November 17, the General Court of Justice, Superior Court Division, Wake County, North Carolina issued an order of rehabilitation and preliminary injunction (the "North Carolina Order") which provides: "any and all pending actions against [Commercial Casualty] are

hereby stayed effective the date of this Order." (Mot. to Stay Ex. A.) In the North Carolina Order, the court also appointed the Commissioner as the rehabilitator for Commercial Casualty.

Commercial Casualty has filed a motion to stay the proceedings in this Court pursuant to the North Carolina Order. Commercial Casualty argues that the North Carolina Order is entitled to full faith and credit, and therefore, this Court should stay the present proceeding against Commercial Casualty. Alternatively, Commercial Casualty contends that this Court should stay this case either as a matter of comity or pursuant to the abstention doctrine announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed.2d 1424 (1943).[1] The issue presented is whether the stay should be honored in a Miller Act action asserting a claim over which the federal district courts have exclusive jurisdiction.

Commercial Casualty cites a number of cases in which federal courts have honored state court injunctions when the state courts are engaged in insurance liquidation proceedings. *See, e.g., Clark v. Fitzgibbons*, 105 F.3d 1049 (5th Cir.1997) (affirming district court's *Burford* abstention from and extension of full faith and credit to Arizona liquidation court's injunction). However, there are only a few cases addressing the precise issue presented here where the action pending in federal court is a claim pursuant to the Miller Act. In *U.S. ex rel. Bernard Lumber Co., Inc. v. Lanier–Gervais Corp.*, 896 F.2d 162 (5th Cir.1990), the plaintiff, Bernard Lumber, a supplier for work done on a building at a U.S. Naval air station in Louisiana, brought an action against its Miller Act surety Integrity Insurance Company ("Integrity") through its statutory guarantor Louisiana Insurance Guaranty Association ("LIGA"). *Id.* at 166–67. Bernard last delivered supplies under the contract on October 24, 1986. *Id.* at 163. Thus, the statute of limitations for Miller Act claims expired on October 24, 1987. *Id.* at 164. In March 1987, the Superior Court of New Jersey declared Integrity insolvent, issued an injunction prohibiting any actions against Integrity, and ordered creditors to file claims. *Id.* at 163. On July 10, 1987, Bernard filed a claim with the liquidator. *Id.* On November 6, 1987, the liquidator approved Bernard's claim in the amount of $13,574.85. *Id.* No objections to the claim were filed. *Id.* On April 13, 1988, Bernard filed a Miller Act suit against LIGA. *Id.* LIGA moved for summary judgment based on Bernard's failure to file suit within the one-year statute of limitations. *Id.* at 163–64.

On appeal, the Fifth Circuit Court of Appeals reversed the district court and held that LIGA was equitably estopped from asserting the statute of limitations defense. *Id.* at 169. The court reasoned that the statute of limitations should not bar Bernard's Miller Act claim because Bernard was precluded by the New Jersey injunction from filing the Miller Act suit earlier:

> There is no doubt that the Superior Court of New Jersey, since it was the state of domicile of Integrity, was a court of competent jurisdiction and had the power to initiate the liquidation pro-

---

1. In *Burford,* the Supreme Court held:

   Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, whether its jurisdiction is invoked on the ground of diversity of citizenship or otherwise, refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest, for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy.

   *Id.* at 317–18, 63 S.Ct. 1098 (footnote and internal quotations omitted).

ceedings, and enter its orders, including the sweeping injunction.

*Id.* at 169. Thus, the court struck an equitable balance, excusing the statute of limitations, recognizing the state court's injunction, and noting that district courts have exclusive jurisdiction over Miller Act claims. *Id.* at 169, 169 n. 13.

■ Commercial Casualty also relies on *U.S. ex rel. Safeway Steel Products, Inc. v. PI Const. Corp.*, 2002 WL 818075 (E.D.La. Apr.26, 2002). Safeway brought a Miller Act suit against PI and sureties on PI's bond. *Id.* at *1. One of the sureties, AmWest, was insolvent and was placed in liquidation by a Nebraska state court. *Id.* The state court issued an order enjoining all proceedings against AmWest. *Id.* The AmWest liquidator filed a motion to dismiss Safeway's action against AmWest or to stay the action based on the *Burford* abstention doctrine and the McCarran–Ferguson Act.[2] However, the *Safeway* court found that *Burford* abstention is not appropriate in a Miller Act case:

This case does not fit the strictures of the *Burford* abstention doctrine. As the Supreme Court has made clear, *Burford* allows a federal court to dismiss a case only if it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar, or if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. A decision to abstain under *Burford* must be based on a careful consideration of the federal interests in retaining jurisdiction over the dispute and ultimately represents a de-

termination that a dispute would best be adjudicated in a state forum. This is a Miller Act suit. It presents no difficult questions of state law, and it may be adjudicated only in a federal forum.... Moreover, *Burford* abstention is permissible only when the district court has discretion to grant or deny relief. The relief sought here is not committed to the Court's discretion. Thus, for all of these reasons, abstention is not a viable option.

*Id.* at *1 (internal quotations and citations omitted).[3] The *Safeway* court also rejected the argument based on the McCarran–Ferguson Act, reasoning that federal courts have exclusive jurisdiction over Miller Act claims; the state insurance statutes did not purport to endow state courts with jurisdiction to adjudicate such claims. *Id.* at *2. Nevertheless, the court held that the state court injunctions were entitled to full faith and credit, and "in the interest of federalism and comity," deferred the proceeding in federal court "pending a modification of the state court injunctions to allow plaintiff to proceed in [the] Court." *Id.* at *2.

Based on *Bernard* and *Safeway*, Commercial Casualty argues that this Court should honor the injunction entered in the North Carolina superior court. In contrast, Plaintiff argues that this case must proceed because the North Carolina superior court is not authorized to determine its Miller Act claim. Plaintiff contends that it should be allowed to establish its claim in this Court and then assert that claim in the North Carolina rehabilitation proceeding.

In support of its position, Plaintiff relies on *U.S. ex rel. Pittman Mechanical Con-*

---

**2.** *See* 15 U.S.C. § 1012(b) ("No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of in-

surance ... unless such Act specifically relates to the business of insurance.").

**3.** For these same reasons, *Burford* abstention is not appropriate in the present case.

*tractors, Inc. v. Irvine & Assocs., Inc.*, 645 F.Supp. 845 (E.D.Va.1986). In *Pittman*, a subcontractor brought suit in federal court in Virginia under the Miller Act against the contractor and its surety. *Id.* at 846. Before the suit was filed, the surety had become subject to rehabilitation proceedings in Indiana. *Id.* The rehabilitator enjoined all persons from commencing any actions against the surety. *Id.* The surety moved for the district court to abstain, claiming the injunction was entitled to full faith and credit. *Id.* at 847. The district court denied the motion. First, the court conducted a minimum contacts analysis and concluded that the Indiana court did not have jurisdiction over Pittman in the Virginia case. *Id.* at 847. The court reasoned, "a state court judgment is not entitled to full faith and credit as to any party not subject to its jurisdiction." *Id.* Second, the court rejected the argument that it should defer to the state rehabilitation proceedings as a matter of comity. *Id.* at 848. The court concluded that the state rehabilitation proceeding could not grant plaintiff the relief sought in federal court because the federal court has exclusive jurisdiction over Miller Act claims, and therefore, plaintiff was not free to file its claim in a rehabilitation proceeding. *Id.* at 848.[4] The court also held that the Indiana rehabilitator was a necessary party to the action and ordered that he be joined as a party defendant in the action. *Id.* at 848–49.

Though the decisions cited by the parties reach different conclusions, they agree on at least two essential principles: federal district courts have exclusive jurisdiction over Miller Act claims, and at some point, a federal district court must decide such a claim. Yet the courts diverge as to when the Miller Act proceeding should take place in a way that cannot be reconciled. Following *Pittman*, the Court would conclude that the rehabilitation court's injunction can be ignored, and this case can proceed without delay. Following *Safeway*, the Court would conclude that consideration should be given to the rehabilitation proceeding such that the rehabilitator would be given an opportunity to consider lifting the injunction for the Miller Act proceeding. *Safeway* leaves open the question of what action this Court should take if the rehabilitator elects not to lift the injunction. Following *Bernard*, the Court would conclude that the rehabilitation court's injunction should be given full faith and credit, and this action should be stayed until the liquidation proceeding is completed. However, the procedure suggested by *Bernard* leaves even more unanswered questions than *Safeway*: How does the rehabilitator have jurisdiction to make any decision regarding the amount of a Miller Act claim? If the rehabilitator denies Plaintiff's claim, is Plaintiff precluded from proceeding in district court? If the rehabilitator allows Plaintiff's claim, is Plaintiff's recovery in the district court limited to the amount allowed by the rehabilitator; i.e., could this Court award Plaintiff more or less than the claim allowed by the rehabilitator? Is Plaintiff entitled to a distribution from the liquidation proceeding when the award is made? If so, what is the effect of that award on this proceeding?

█ The Court holds that wise judicial administration requires that this case be permitted to proceed at this time.[5] Allowing the case to proceed permits Plaintiff to have its Miller Act claim adjudicated in the

---

4. Although it acknowledged that district courts have exclusive jurisdiction over Miller Act claims, the court in *Bernard* expressly rejected "the holding, expressions and impli-

cations of" *Pittman*. 896 F.2d at 169, 169 n. 13.

5. The Court thus rejects Commercial Casualty's argument that the principles of comity

only forum authorized to do so. Establishment of Plaintiff's claim should facilitate the liquidation process. The rehabilitator will have the benefit of Plaintiff's claim being an established amount rather than a contested amount which the liquidator is not empowered to resolve. This approach does not violate notions of comity because this Court is deciding only the issue that must be decided by this Court, the amount of Plaintiff's claim. This decision does not invade the province of the rehabilitator who must decide on the proper distribution of the assets of Commercial Casualty. If the Court stayed this action until the liquidation ended, the parties would still have to litigate these issues before this Court as was required in *Bernard*. Thus, no significant saving is realized by delay.

Having decided that the case will proceed, a question has been raised concerning what actions Commercial Casualty and its representatives can take without violating the North Carolina Order. Recognizing the dilemma faced by Commercial Casualty and its counsel and for the sake of comity, the Court will continue this case from the January 20, 2004 Trial Calendar and will set the case for trial March 29, 2004. This continuance is intended to allow Commercial Casualty's attorneys to confer with the rehabilitator in North Carolina in an effort to obtain authority to pursue settlement negotiations and/or prepare for trial on the Miller Act claim.

Accordingly, Commercial Casualty's Motion for a Stay of Proceedings [50–1] is hereby **DENIED**. Plaintiff's Request for Oral Hearing [55–1] is hereby **GRANTED nunc pro tunc.**

flowing from *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), dictate that this Court should honor the North Carolina injunction.